# No. 22-2244

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

JENNIFER ZUCH,

*PETITIONER-APPELLANT*,

v.

COMMISSIONER OF INTERNAL REVENUE,

*RESPONDENT-APPELLEE*.

On Appeal From
the United States Tax Court
(Tax Court Docket No. 25125-14)
Honorable Lewis R. Carluzzo, United States Tax Court Judge

## OPENING BRIEF FOR PETITIONER-APPELLANT

Agostino & Associates, P.C.
Counsel for Appellants
14 Washington Place
Hackensack, New Jersey 07601
Tel: (201) 488-5400

Of Counsel:
Frank Agostino

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... iii

JURISDICTION STATEMENT ......................................................1

ISSUES PRESENTED FOR REVIEW .........................................3

RELATED CASES AND PROCEEDINGS ...................................4

STATEMENT OF THE CASE ......................................................4

    Relevant Facts..............................................................................5

    Rulings Presented for Review ....................................................8

ARGUMENT..................................................................................8

    **Standard of Review**..................................................................8

  I.  **Point I: The Tax Court's Dismissal of Appellant's Case Denied Her a Meaningful Opportunity to Dispute Her Tax** ....................8

  II. **Point II: The Tax Court Has Jurisdiction to Determine an Overpayment Or to Order a Refund of Credit of Tax Paid in a Section 6330 Proceeding**.............................................................. 11

  III.**Point III: When Congress Provided For Judicial Review of IRS Determinations in CDP Hearings, It Did Not Intend That its Grant of Judicial Review Be Superseded By the IRS's Authority Under Section 6402** ........................................................................ 15

  IV. **Point IV: The Tax Court's Decision Frustrates Congress's Intent to Provide a Prepayment Forum to Taxpayers Seeking Review of IRS Actions** ................................................................. 19

  V. **Point V:  Section 6330(c)(2)(B) Must Be Read on the Context of the Congress' Grant of Procedural Due Process Rights in Sections 6212 and 6213, Not Just Section 6330**……………26

  VI. **Point VI: The Tax Court's Decision Shields the IRS From the Consequences of Its Original Illegal Seizure of Appellant's Tax Payments**……...…………………………………………...28

  VII. **Point VII: The Tax Court's Decision That the Case is Moot Violates the Administrative Procedures Act Mandate to Set Aside Agency Action That is Without Basis in Law**………30

CONCLUSION ............................................................................ 31

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a) and 3d
    Cir. R. 31.1(c) ..................................................................... 32

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(g) and 3d
    Cir. R. 28.3(d) .................................................................... 33

CERTIFICATE OF SERVICE ................................................... 34

# TABLE OF AUTHORITIES

## Federal Cases:

*Achacoso-Sanchez v. INS*, 779 F.2d 1260 (7th Cir. 1985)…………………30

*Anthony v. Comm'r*, 66 T.C. 367 (1976)……………………………………9

*Battat v. Comm'r*, 148 T.C. 32 (2017)………………………………………9

*Baranowicz v. Comm'r*, 432 F.3d 972 (9th Cir. 2005)………………………9

*Boechler, P.C. v. Comm'r of Internal Revenue*, 212 L. Ed. 2d 524, 142 S. Ct. 1493, 1499 (2022)……………………………………………………………..18

*Bokum v. Comm'r.*, 992 F.2d 1136 (11th Cir. 1993)………………………...22

*Borlem S.A. v. United States*, 913 F.2d 933 (Fed. Cir. 1990) ………………30

*Boudette v. Barnette,* 923 F.2d 754 (9th Cir.1991)…………………………15

*Cannon v. University of Chicago,* 441 U.S. 677 (1979)……………………15

*Davis v. Mich. Dep't of Treasury*, 489 U.S. 803 (1989)……………………27

*Delamater v. Schweiker*, 721 F.2d 50 (2d Cir. 1983)………………………24

*Den v. Hoboken Land and Improvement Co.*, 59 U.S. 272 (1856)…………16

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000)……….27

*First Rock Baptist Church Child Dev. Ctr. v. Commissioner*, 148 T.C. 380 (2017)…………………………………………………………………....12

*Flora v. United States*, 362 U.S. 145 (1960)………………………………..22

*Freiji v. Commissioner*, 125 T.C. 14 (2005)………………………………...30

iv

*Giamelli v Comm'r*, 129 T.C. 107 (2007) …………………..………………19

*Greene-Thapedi v. Comm'r.*, 126 T.C. 1 (2006)…………...……………20, 23

*Hill v. Boy*, 144 F.3d 1446 (11th Cir. 1988); …………...……………………30

*Johnson v. Comm'r*, 136 T.C. 475 (2011), *aff'd*, 502 F. App'x 1 (D.C. Cir. 2013)…………..……………………………………………………....9, 10

*Katz v. Commissioner*, 115 T.C. 329 (2000)………………………………….20

*Laing v. United States*, 423 U.S. 161 (1976)………………………..…..10

*Light Sources, Inc. v. Cosmedico Light, Inc*., 360 F. Supp. 2d 432 (D. Conn. 2005)……………………………………………………………………….25

*Mach Mining, LLC v. EEOC,* 575 U.S. 480 (2015)………………….…13

*McLane v Commissioner*, T.C. Memo. 2018-149………………….....21

*McLane v. Comm'r*, 24 F.4th 316 (4th Cir. 2022)………………….26, 27

*Miles v. Apex Marine Corp.,* 498 U.S. 19 (1990) …………………………15

*Minizza v. Stone Container Corp.*, 842 F.2d 1456 (3d Cir. 1988)……………8

*Montgomery v. Commissioner*, 122 T.C. 1 (2004)…………………………21

*Muntwyler v. United States*, 703 F.2d 1030 (7th Cir. 1983)………………..28

*Naftel v. Comm'r.*, 85 T.C. 527 (1985)……………………………..……21

*O'Dell v. United States,* 326 F.2d 451 (10th Cir.1964))……………………28

*Ryskamp v. Commissioner*, 797 F.3d 1142 (D.C. Cir. 2015)…………….12, 15

*Sotiropoulos v. Comm'r*, 142 T.C. 269 (2014)………..…………………….9

*Soules v. Connecticut, Dept. of Emergency Services and Public Protection*, 882 F.3d 52 (2d Cir. 2018)……………………….……………............25

*United States v. Article of Drug . . . Bacto-Unidisk . . .*, 394 U.S. 784 (1969)……………………………………………………………………20

*United States v. Utah Construction & Mining Co*., 384 U.S. 394 (1966)….25

**State Cases:**

*Naglieri v.Trabattoni,* 20 N.J.Super. 173 (App. Div. 1952)……………….29

*Wilzig v. Sisselman,* 209 N.J.Super. 25 (App.Div. 1986) …………………29

**Federal Statutes:**

5 U.S.C. §706(2)(A)

26 U.S.C. § 6212(a)…………………………………………………...27

26 U.S.C. § 6213………………………………………………………27

26 U.S.C. § 6230………………………………………………………16

26 U.S.C. § 6330………………………………………………………16

26 U.S.C. § 6330(c)(2)(B)……………………………………………..8

26 U.S.C. § 6330(c)(3)…………………………………………………12

26 U.S.C. § 6330(d)(1)…………………………………..8, 11, 12, 16, 24, 26

26 U.S.C. § 6330(e)(1)…………………………………………………18

26 U.S.C. § 6402……………………………………………………17, 18

26 U.S.C. § 6512………………………………………………………20

26 U.S.C. § 7803(a)(3)(D)……………………………………………………..8

Revenue and Restructuring Act of 1998……………………………………15

**Federal Regulations:**

26 C.F.R. § 301.6320-1……………………………………………………..16

26 C.F.R. § 301.6330-1……………………………………………………..16

26 C.F.R. § 301.6330–1(e)(3) A–E8………………………………………12

**Other Authorities:**

S. Rept. 105-174 (1998), at 67……………………………………………16

# JURISDICTIONAL STATEMENT

Pursuant to § 6330[1], on August 31, 2013, the Commissioner sent the taxpayer a Notice of Intent to Levy And Notice of Your Right to a Hearing. (A563 – A565).[2]

On September 27, 2013, the taxpayer filed a timely Internal Revenue Service ("IRS") Form 12153, *Request for a Collection Due Process or Equivalent Hearing* ("CDP Request"). (A566-A592).

On September 25, 2014, Commissioner issued a Notice of Determination sustaining the proposed levy of the taxpayer. (A291-A294).

On October 22, 2014, the taxpayer timely petitioned the United States Tax Court for judicial review, under § 6330(d)(1), seeking a redetermination of her tax liability and relief from the Commissioner's determination to sustain the proposed levy. (A24-A38).

On April 29, 2015, the Commissioner filed a motion for summary judgment. (A10).

On December 12, 2016, the Tax Court denied the Commissioner's motion for summary judgment. (A16).

On December 23, 2016, the Commissioner filed a motion to remand the case back to his Office of Appeals, which was granted on December 29, 2016. (A16)

---

[1] All Section ("§") references are to the relevant version of the Internal Revenue Code.

[2] Citations to Appellant's Appendix are in the form "(A##)," with appropriate page numbers inserted.

On June 12, 2017, the Commissioner's Office of Appeals issued a Supplemental Notice of Determination sustaining its original determination. (A266-A270).

The case was submitted to the Tax Court fully stipulated under Tax Court Rule 122 with simultaneous opening and reply briefs filed by both parties. (A20-A21).

On March 6, 2020, the Commissioner filed a Motion to Dismiss on grounds of mootness. (A21). While the Tax Court case was pending, the Commissioner seized the taxpayer's income tax refund for 2018 and applied it against the 2010 income tax liability, which was the liability at issue in the Tax Court case.

On April 6, 2022, the Tax Court granted the Commissioner's motion to dismiss and issued an Order of Dismissal. (A23).

On July 1, 2022, the taxpayer filed a timely notice of appeal with the Tax Court. (A1-A5). Venue is proper because the taxpayer was a resident of the state of New Jersey when the petition was filed. 26 U.S.C. § 7482(b)(1)(G)(i).

## ISSUES PRESENTED FOR REVIEW

1.      Whether 26 U.S.C. § 6330(c)(2)(B) authorizes the Tax Court to determine Taxpayer's 2010 income tax liability even if the liability is less than zero.

2.      Whether the Commissioner can use 26 U.S.C. § 6402 to abrogate 26 U.S.C. §§ 6330(c)(2)(B) and 7803(a)(3)(D)'s right to challenge the position of the Internal Revenue Service and be heard.

3.      Whether Taxpayer is entitled to a refund of tax as reported on her 2010 Form 1040X..

4.      Whether any purported tax liability for 2010 should be abated based on the Commissioner's failure to comply with 26 U.S.C. §§ 6212 and 6213.

5.      Whether the Commissioner was required to honor Taxpayer and her spouse's allocation of the voluntary estimated tax payments.

6.      Whether Taxpayer was entitled to de novo review in the Tax Court of her 2010 income tax liability.

7.      Whether the Tax Court has jurisdiction to determine an overpayment or to order a refund or credit of tax paid in a 26 U.S.C. § 6330 proceeding.

## RELATED CASES AND PROCEEDINGS

There are no related cases or proceedings pending in any other court.

## STATEMENT OF THE CASE

The Taxpayer appeals from the April 6, 2022 order of dismissal of the United States Tax Court (Honorable Lewis R. Carluzzo) granting the Commissioner's motion to dismiss on grounds of mootness and sustaining the Commissioner's determination to levy the taxpayer's assets.

At issue is the taxpayer's 2010 tax liability. The taxpayer filed an amended tax return as married filing separately from her spouse and reported a refund due to her resulting from an overpayment of tax. (A475-A492). The Commissioner accepted the taxpayer's return but seized her estimated tax payments and gave them to her spouse, who had also filed a return as married filing separately but reported no estimated tax payments. (A305-A310). The Commissioner then issued a Notice of Intent to Levy to the taxpayer seeking to collect the tax that she had previously paid but which the Commissioner gave to her spouse. (A563-A565).

Although the taxpayer timely availed herself of a collection due process ("CDP") hearing with the Commissioner's Office of Appeals and subsequently an action in the United States Tax Court, the Commissioner used his authority under 26 U.S.C. § 6402 to seize the taxpayer's refund for later years to satisfy the 2010 liability. As a result, the Commissioner argued that its collections efforts had

4

concluded and that the Tax Court no longer had jurisdiction to hear the taxpayer's case.

The Commissioner's determination to sustain the proposed levy and the decision to seize the taxpayer's refunds under 26 U.S.C. § 6402 were based on errors of fact and law, and as a result was arbitrary and capricious.

The Tax Court's decision to dismiss the case on grounds of mootness is based on errors of law.

**Relevant Facts**

Taxpayer submitted two voluntary estimated tax payments, with respect to her 2010 income tax liability, to the IRS with her husband, Patrick Gennardo (sometimes "Gennardo"). The first payment, which was $20,000, was made on or about June 19, 2010, and the second payment, which was $30,000, was made on January 11, 2011. The funds for these voluntary estimated tax payments were drawn from their joint bank account and were accompanied by cover letters explaining that the payments were being made on behalf of Appellant and her husband jointly. (A314 and A633-A640). Taxpayer and Gennardo then filed separate Forms 1040, *U.S. Individual Income Tax Return*, with Taxpayer reporting $0 of estimated tax payments credited against her tax liability and Gennardo reporting $10,000 of estimated tax payments. (A316-A381). Taxpayer and Gennardo filed separate Forms 1040X, *Amended U.S. individual Income Tax Return*.  (A475-A562). Taxpayer's Form 1040X reported an

additional tax liability and the entire $50,000 of estimated tax payments credited against her tax liability, reporting a refund due to her. Gennardo again reported $0 of estimated tax payments. The IRS accepted both Taxpayer and Gennardo's amended tax returns. After filing his return, Gennardo filed an offer-in-compromise with the IRS for tax liabilities prior to 2010. The IRS, without explanation, disallowed the $50,000 of estimated tax payments reported on taxpayer's tax return then seized the funds and transferred them to Gennardo's tax account. The IRS then claimed that the $50,000 was included in Gennardo's offer- in-compromise and took it for that purpose. (A59).

Although it had accepted portions of her amended tax return, but disallowed others, the IRS never notified Taxpayer that it had changed her return, whether by statutory notice of deficiency or math error notice. The only correspondence Taxpayer received was a Final Notice of Intent to Levy ("Final Notice") informing her that the IRS sought to forcefully collect her new tax liability. (A563-A565).

On September 27, 2013, Taxpayer timely requested a CDP hearing in response to the Final Notice. (A566). In her request, Taxpayer requested that the IRS Office of Appeals ("Appeals") review her underlying liability that it sought to collect from her and to credit her $50,000 estimated tax payments as she had reported on her tax return. She also requested that the IRS abate any penalties against her on the grounds that she demonstrated reasonable cause. She also informed the IRS that she

and Gennardo were then in the middle of a contentious divorce and that enforced collection would create an undue hardship for her. Taxpayer supplemented her CDP request with an affidavit from Gennardo which included copies of their joint bank account statement reflecting the withdrawal and the cover letter demonstrating that the estimated payments were joint. (A633-A640).

Thereafter, Appeals issued its Notice of Determination and determined with respect to what it called "Challenges to the Liability" that it was denying Appellant's request for relief.   (A291-A294). Taxpayer then timely appealed the Notice of Determination in the Tax Court, requesting that the Tax Court grant her de novo review of the underlying liability, conclude that the estimated tax payments were credited to her, and conclude that she had no tax due and was due a refund from the IRS. (A24-A38).

During the Tax Court proceeding, the IRS filed a motion for summary judgment which the Tax Court denied. The parties submitted the case fully stipulated under Tax Court Rule 122 and briefed the issues in 2018. In 2019, the IRS credited a refund for the 2018 tax year against the amount it claimed Appellant owed for the 2010 tax year and subsequently filed a motion to dismiss on grounds of mootness. On April 6, 2022, the Tax Court granted the IRS's motion to dismiss holding that, because the liability had been paid, the case was moot. The Tax Court did not address any of the issues raised in the CDP hearing or in the Tax Court.

## Rulings Presented for Review

In its April 6, 2022 Order, the Tax Court held that because there is no unpaid liability for the determination year upon which a levy could be based and the Commissioner is no longer pursuing the proposed collection action, the case was moot. Accordingly, the Tax Court dismissed the case.

Taxpayer appeals the Order and dismissal in its entirety and asks this Court to determine that the case was not moot because the Tax Court was obligated to determine Taxpayer's underlying tax liability when its jurisdiction was properly invoked, which occurred when Taxpayer raised the issue under §6330(c)(2)(B).

## Argument

## Standard of Review

This Court has plenary review over the Tax Court's determination of law of the Internal Revenue Code. *Minizza v. Stone Container Corp.*, 842 F.2d 1456, 1459 (3d Cir. 1988).

## Point I

### The Tax Court's Dismissal of Appellant's Case Denied Her a Meaningful Opportunity to Dispute Her Tax

By dismissing the case on the grounds of mootness, the Tax Court denied Taxpayer a meaningful opportunity to dispute her underlying tax liability. Sections 6330(c)(2)(B), 6330(d)(1), and 7803(a)(3)(D)'s "right to challenge the position of the Internal Revenue Service and be heard" allow taxpayers to raise the amount of

their underlying tax liability in a CDP hearing and requires the Tax Court to review the determination regarding that liability. One of the primary functions of the Tax Court is to act as a convenient prepayment forum in which taxpayers can challenge IRS determinations regarding tax liability without paying the tax first. *Sotiropoulos v. Comm'r*, 142 T.C. 269, 272 (2014).

Mootness exists in Tax Court even though it is not an Article III court. The Tax Court is an Article I court that is not directly constrained by the case or controversy requirement under Article III of the Constitution. *See Battat v. Comm'r*, 148 T.C. 32, 46 (2017). However, the same principles apply to the exercise of the Tax Court's judicial power. *See Anthony v. Comm'r*, 66 T.C. 367, 370 (1976) ("Without a 'case' or 'controversy' before us, we would be exercising nonjudicial powers, and our opinions would not be reviewable[.]" (fn. ref. omitted)), *aff'd without published opinion*, 566 F.2d 1168 (3d Cir. 1977); *see also Baranowicz v. Comm'r*, 432 F.3d 972, 975 (9th Cir. 2005).

In a CDP case, mootness can occur when the Tax Court can no longer grant the taxpayer any relief. In a typical CDP case involving tax collection, a decision by the Tax Court not to sustain a collection action (e.g., a levy or NFTL filing) is the primary relief that the Tax Court may grant. *See Johnson v. Comm'r*, 136 T.C. 475, 488 n.13 (2011), *aff'd*, 502 F. App'x 1 (D.C. Cir. 2013). In CDP cases, taxpayers can also challenge the underlying liability that the IRS seeks to collect. The ability to

challenge the underlying liability arises when the taxpayer did not receive a statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute it. *Id.*

Here, there is no question that the taxpayer raised the issue of her underlying liability during the CDP hearing. (A566). It is further undisputed that the IRS evaluated her claim during the CDP hearing and issued its Notice of Determination evaluating and subsequently denying her claim. (A291-A294). The taxpayer timely invoked the Tax Court's jurisdiction to review the IRS's Notice of Determination and the Tax Court acquired jurisdiction over the controversy (i.e., the amount the taxpayer owed to the IRS). The IRS then slowly seized the taxpayer's refunds in future years to "satisfy" the liability, ignoring the controversy before the Tax Court. The Government's position in this case would isolate the taxpayer from most other income taxpayers by preventing her from having an opportunity to challenge the IRS and be heard. Denial of an opportunity to litigate in the Tax Court is out of keeping with the thrust of the Code, which generally allows income-tax payers access to that court. *Laing v. United States*, 423 U.S. 161, 176–77, (1976). As a result, the taxpayer is left without any forum to adjudicate the IRS's decision to initially seize her money or its decision to audit her return and disallow her credits for tax paid.

For the IRS to argue that the case is moot because it seized the taxpayer's refunds after it illegally seized her tax payments after she filed her return, is

10

antithetical to the concept of due process and clearly violates 26 U.S.C. § 6330. This gives the IRS the power to moot any CDP case and deprive every taxpayer of their day in court by just seizing their refunds, in cases in which collection is supposed to cease. Taxpayer is in the position where, without any fault of her own, she can no longer challenge her underlying liability because the issue has been unfairly mooted.

## Point II

### The Tax Court Has Jurisdiction to Determine an Overpayment Or to Order a Refund of Credit of Tax Paid in a Section 6330 Proceeding

The Tax Court's conclusion that the case was moot because it does not have jurisdiction to determine an overpayment or to order a refund or credit of tax paid in a §6330 proceeding was in error. Because the Taxpayer challenged her underlying liability during the administrative proceeding and when invoking the Tax Court's jurisdiction, the Tax Court was required to determine her liability, and mootness could not apply unless the IRS conceded the issue. Mootness depends on the IRS conceding the liability, not just collectability.

Section 6330(d)(1) defines the Tax Court's jurisdiction to review such a determination:

> (1) Judicial review of determination.—The person may, within 30 days of a determination under this section, appeal such determination to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter).

That is, it is not the NFTL that a taxpayer may appeal but rather Appeals' "determination" made under §6330(c)(3). When the taxpayer challenges the underlying liability, the Tax Court acquires jurisdiction not simply over the lien but over "such matter." *See First Rock Baptist Church Child Dev. Ctr. v. Commissioner*, 148 T.C. 380 (2017). The distinction between collectability, i.e. whether to uphold the filing of a lien or levy, and liability, i.e. whether a taxpayer actually owes what the IRS claims, is what the Tax Court overlooked. Section 6330(d)(1), which provides that a "person may, within 30 days of a determination under this section, petition the Tax Court for review of such determination (and the Tax Court shall have jurisdiction with respect to such matter)," grants the Tax Court jurisdiction to review agency action that is embodied in the "determination." Section 6330(d)(1) does not differentiate between matters involving liability and/or liability and collection.  Both the original Notice of Determination and the Supplemental Notice of Determination addressed the taxpayer's "Challenge to the Liability" for the tax the IRS sought to collect.  (A291-A294, A266-A270).

Section 6330 does not define "determination." The reference to a determination clearly includes the Appeals Office's findings and decisions after it conducts a CDP hearing. *Ryskamp v. Commissioner*, 797 F.3d 1142, 1148 (D.C. Cir. 2015). *See also*  § 6330(c)(3); *see also* 26 C.F.R. § 301.6330–1(e)(3) A–E8. At issue in *Ryskamp* was the IRS's determination that a taxpayer raised only frivolous

12

arguments when requesting a CDP hearing. There, the IRS took the position that its determination was not subject to judicial review. The D.C. Circuit disagreed, holding that it was required to evaluate the IRS's ***determination***, including the finding of frivolity. *Id. (emphasis added).*

The D.C. Circuit's approach in *Ryskamp* comports with precedent addressing similar claims by other agencies that their actions are shielded by statute from judicial review. In *Mach Mining, LLC v. EEOC,* 575 U.S. 480, (2015), for example, the Supreme Court considered whether Title VII bars judicial review of the EEOC's assertion that it satisfied its statutory obligation to attempt conciliation with an employer before the EEOC may file a Title VII suit in court. *Id.* at 482. The government argued that various provisions of Title VII preclude judicial review of the EEOC's satisfaction of its pre-filing conciliation obligation. *See id.* at 484. The Supreme Court rejected that argument. *Id.* at 488-489. Instead, the Court concluded that a reviewing court must ensure that the EEOC complied with statutory conciliation requirements at least to the degree that it communicated to the employer that an unlawful employment practice had been alleged and engaged the employer in some form of discussion. *Id.* at 489–495.  The Tax Court was obligated to make a decision with respect to the determination, not the IRS's litigating position that it was no longer seeking to collect the tax. It is not enough for the IRS to argue that

there *may* be other venues, such as a refund claim litigated in District Court.[3] The Tax Court was still obligated to determine its own jurisdiction and carry out its judicial review function. Post-payment review is almost certainly too late to redress a taxpayer's objections to the collection process, and in this case, the amount of the underlying liability the IRS was trying to collect. Requiring a taxpayer to pay her tax liability in full before she can obtain review of her claims effectively nullifies the utility of such review. Additionally, although a CDP hearing is often focused on payment terms, in some cases, as here, it is the taxpayer's *only* opportunity to dispute the underlying tax liability before the IRS. *See* 26 U.S.C. § 6330(c)(2)(B). In such a case, the IRS's rejection of a taxpayer's argument or the Tax Court's dismissal of the matter as moot, as it did here, would foreclose the taxpayer from obtaining judicial review of the correctness of the Service's assessment of liability. *Ryskamp v. Comm'r*, 797 F.3d 1142, 1151 (D.C. Cir. 2015). Congress could not have intended to create a system in which certain taxpayers are foreclosed from any pre-payment forum to litigate their disputes with the IRS.

Although the Tax Court is an Article I court and a court of limited jurisdiction, its failure to resolve the claims and controversies properly before it is an improper limitation of its jurisdiction. Congress enabled taxpayers to challenge their

---

[3] As explained in more detail in Point IV, res judicata may even prevent taxpayers from litigating these cases in other fora.

underlying tax liabilities during CDP hearings and to challenge the IRS's determinations before the Tax Court. By unilaterally limiting its own jurisdiction, the Tax Court is acting contrary to Congress's enactments, which is depriving taxpayers of their opportunity to challenge the IRS and be heard.

### Point III

**When Congress Provided For Judicial Review of IRS Determinations in CDP Hearings, It Did Not Intend That its Grant of Judicial Review Be Superseded By the IRS's Authority Under Section 6402**

By allowing the IRS to offset and thereby moot the action in the Tax Court, the Tax Court frustrated the Congressional grant of judicial review over IRS determinations made in CDP hearings. The Tax Court's holding violates the canons of statutory construction.

It is a settled principle of statutory construction that when Congress drafts a statute, courts presume that it does so with full knowledge of the existing law. *Miles v. Apex Marine Corp.,* 498 U.S. 19, (1990) (citing *Cannon v. University of Chicago,* 441 U.S. 677, 696–97, (1979)). Accordingly, "[w]hen two statutes conflict the general rule is that the statute last in time prevails as the most recent expression of the legislature's will." *Boudette v. Barnette,* 923 F.2d 754, 757 (9th Cir.1991) (citation omitted).

CDP is a procedural safeguard created by Congress as part of the Internal Revenue Service Revenue and Restructuring Act of 1998 ("RRA"). It requires that the IRS follow a set of procedures to ensure that taxpayers have due process

protections when facing IRS levy and lien actions. 26 U.S.C. §§ 6320, 6330. Prior to passage of the RRA, it had long been understood that taxpayers did not have any right to due process protections in connection with the collection of tax debts. *Den v. Hoboken Land and Improvement Co.*, 59 U.S. 272 (1856) (discussing the historical analysis dating back to England's Magna Carta finding no constitutional right to due process when government seizes property to pay past due debts). Congress required these steps in recognition of the need to curb potential IRS abuses in actions seizing and filing liens against property rights. *See* S. Rept. 105-174 (1998), at 67 *et seq.* (noting that "taxpayers are entitled to protections in dealing with the IRS that are similar to those they would have in dealing with any other creditor").

The IRS developed procedures by which they would conduct CDP hearings. *See* Treas. Reg. §§ 301.6330-1 (pre-levy) and 301.6320-1 (post-filing Notice of Federal Tax Lien). The key element of §6330 and the corresponding CDP procedures is that they permit taxpayers to request a hearing before the IRS Office of Appeals and give taxpayers the opportunity to present a collection alternative or, in certain instances such as present in this case, challenge the underlying liability that the IRS seeks to collect. The RRA also provided judicial review of the administrative determinations that the IRS made at the conclusion of its collection due process hearing. 26 U.S.C. § 6330(d)(1). Judicial review of claims regarding the taxpayer's underlying liability are only limited in cases where the taxpayer had a

previous opportunity to challenge and was either unsuccessful or failed to raise a challenge, neither of which occurred here.

In contrast to Congress's grant of administrative review in CDP hearings, including underlying liabilities, the IRS relied on its authority under §6402 to offset the underlying liability by an amount owed to the taxpayer for a future tax year, which nullified the Tax Court's jurisdiction granted by Congress under §6330(d)(1). The IRS argued, and the Tax Court agreed, that jurisdiction existed to hear the taxpayer's challenge raised under section 6330 but then that jurisdiction disappeared as a result of section 6402. This is contrary to what Congress intended when it passed section 6330 and granted taxpayers judicial review of IRS administrative determinations.

Section 6402 prohibits judicial review of overpayments used to offset 1) past-due supports payments; 2) collection of debts owed to Federal Agencies; 3) collection of past-due, legally enforceable State income tax obligations; and 4) collection of unemployment compensation debts. 26 U.S.C. §§ 6402(c)-(f). Use of offsets under §6402 in a way that frustrates or eliminates the Tax Court's jurisdiction under §6330(d) could not have been contemplated by Congress when it enacted §6330. The canons of statutory construction compel the conclusion that Congress was aware of the language of §6402 when it granted the Tax Court jurisdiction in

§6330(d) and that Congress did not intend to limit the Tax Court's §6330 jurisdiction by §6402.

Moreover, 6330(e)(1) provides that "if a [collection due process] hearing is requested ... the levy actions which are the subject of the requested hearing ... shall be suspended for the period during which such hearing, and appeals therein, are pending." To enforce that suspension, a "proper court, including the Tax Court," may "enjoi[n]" a "levy or proceeding during the time the suspension ... is in force," *Boechler, P.C. v. Comm'r of Internal Revenue*, 212 L. Ed. 2d 524, 142 S. Ct. 1493, 1499 (2022). This explicit limitation on collection while the case in pending, directly contrasts with the IRS use of § 6402 offsets in this case. Congress was clear that collection of the liability should cease while review of IRS action was pending.

The general rule of § 6402 is that, in the case of any overpayment, the IRS, within the statute of limitations, may credit the amount of the overpayment against the liability in respect of an internal revenue tax. The case pending in the Tax Court was a challenge to the liability. The case was fully submitted in August 2018. The case was pending awaiting decision for two years. The IRS offset of the overpayment before the Tax Court determined a liability was contrary to the purpose of § 6330(c), the right to challenge a liability and be heard, and under the facts of this case, was arbitrary and capricious.

The Commissioner's reliance on § 6402 has now created a jurisdictional loophole depriving taxpayers of judicial review. In other words, any taxpayer invoking the Tax Court's CDP jurisdiction can have their case dismissed by the IRS offsetting the liabilities using future refunds, depriving the taxpayer of her day in court. This loophole runs afoul of the purpose of granting taxpayers the ability to challenge collection determinations in the Tax Court.

## Point IV

### The Tax Court's Decision Frustrates Congress's Intent to Provide a Prepayment Forum to Taxpayers Seeking Review of IRS Actions

When Congress enacted §6330, it intended to provide taxpayers with due process protections when dealing with the IRS. It further intended to provide the Tax Court as a forum in which taxpayers could seek relief from abuses of taxpayer due process rights. By dismissing taxpayer's case, the Tax Court acted contrary to Congress's enactments.

Section 6330 is remedial legislation. *See Giamelli v Comm'r*, 129 T.C. 107, 118 (2007) (Wherry, J., concurring) ("Congress enacted section 6330 as a part of remedial legislation, the Internal Revenue Service Restructuring and Reform Act of 1998 . . . to ensure taxpayer rights against alleged Internal Revenue Service mistreatment by affording taxpayers 'formal procedures designed to ensure due process where the IRS seeks to collect taxes by levy (including by seizure).'" (quoting S. Rept. 105-174, at 67 (1998), 1998–3 C.N. 537, 603)); *see also Greene-*

*Thapedi*, 126 T.C. 1, 15 (2006) (Vasquez, J. dissenting) ("Section 6330 is remedial legislation.") (citing *Katz v. Commissioner*, 115 T.C. 329, 333 n. 8 (2000)). "Remedial legislation should be construed broadly and liberally to effectuate its purposes." *Greene-Thapedi*, 126 T.C. at 15. Remedial legislation "must be liberally interpreted to subserve the clear public policy, reflected in the statute," *Jordan v. Shelby Mut. Plate Glass & Cas. Co.*, 142 F.2d 52, 57 (4th Cir. 1944), and the Supreme Court has hesitated to narrowly and restrictively read remedial legislation "in the absence of congressional direction to do so[.]" *United States v. Article of Drug . . . Bacto-Unidisk . . .*, 394 U.S. 784, 792 (1969).

Further, the legislative history of § 6512(b)(2) supports the taxpayer's position that the purpose of enacting § 6512(b)(2) was for taxpayer relief:

> The committee believes that if the Tax Court determines that a taxpayer is due a refund and the IRS fails to issue that refund, ***the taxpayer should not have to incur the additional time, trouble, and expense of enforcing the Tax Court's decision in another forum***. Rather, the taxpayer should be able to enforce the decision in the court that entered the decision.

*Greene-Thapedi*, 126 T.C. at 10 n. 17 (emphasis added) (quoting S. Rept. 100–309, at 17 (1988)).

Sections 6330 and 6512(b)(2) were enacted to help taxpayers. They are both remedial provisions and should be liberally construed for their intended purposes; namely, to ensure that taxpayers have sufficient due process during collection

actions and that taxpayers not be required to enforce a Tax Court decision regarding refund in another forum. These statutes focus upon providing taxpayers with a fair collection process which includes not being made to enforce one court's decision in another court. Once a petitioner invokes the jurisdiction of the Tax Court, jurisdiction lies with the Tax Court and remains unimpaired until it has decided the controversy. *Naftel v. Comm'r.*, 85 T.C. 527, 530 (1985). The Court's charge under §§6330 and 7803(a)(3) is to ensure that the Commissioner collects the "correct amount of tax by observing all applicable law and administrative procedures." *Montgomery v. Commissioner*, 122 T.C. 1, 10 (2004).

The Tax Court in *McLane v Commissioner*, T.C. Memo. 2018-149, sought to explain *Green-Thapedi* and its jurisdiction to issue a refund under §6330 by denying that its holding frustrated Congressional intent by limiting a remedial statute. But limiting its §6330 jurisdiction in such a way ultimately frustrates Congressional intent in enacting §7441 and creating the Board of Tax Appeals and subsequently, the Tax Court. The legislative history surrounding both the creation of the Board of Tax Appeals and the subsequent revisions of the basic statute supports the Taxpayer. The House Committee Report explained the purpose of the bill:

> 'The committee recommends the establishment of a Board of Tax Appeals to which a taxpayer may appeal prior to the payment of an additional assessment of income, excess-profits, war-profits, or estate taxes. Although a taxpayer may, after payment of his tax, bring suit for the

recovery thereof and thus secure a judicial determination on the questions involved, he can not, in view of section 3224 of the Revised Statutes, which prohibits suits to enjoin the collection of taxes, secure such a determination prior to the payment of the tax. The right of appeal after payment of the tax is an incomplete remedy, and does little to remove the hardship occasioned by an incorrect assessment. The payment of a large additional tax on income received several years previous and which may have, since its receipt, been either wiped out by subsequent losses, invested in nonliquid assets, or spent, sometimes forces taxpayers into bankruptcy, and often causes great financial hardship and sacrifice. These results are not remedied by permitting the taxpayer to sue for the recovery of the tax after this payment. He is entitled to an appeal and to a determination of his liability for the tax prior to its payment.' (Emphasis added.)

*Flora v. United States*, 362 U.S. 145, 158–59, 80 S. Ct. 630, 637–38, 4 L. Ed. 2d 623 (1960).

To allow the Commissioner to collect this tax with no opportunity to challenge it in a prepayment forum is antithetical to the desires of Congress in creating the Tax Court. To create a situation in which petitioner has no pre-payment forum frustrates the basic intent of Congress and must overrule any perceived lack of jurisdiction because of reading §6330.

The Tax Court's decision makes it so that taxpayers with such a claim would no longer have a choice of fora for their tax issues. *See Bokum v. Comm'r.*, 992 F.2d 1136 (11th Cir. 1993). Such taxpayers are forced to pay their taxes and sue for a refund in district courts. Taxpayers would then be barred by res judicata from relitigating a claim raised in the Tax Court. Thus, taxpayers would essentially be

denied the right to challenge deficiencies in the Tax Court. This is clearly not what Congress intended when creating a prepayment forum for taxpayers.

The IRS based its motion to dismiss on the Tax Court's holding in *Green-Thapedi v. Comm'r*, 126 T.C. 1, (2006), in which the Tax Court held that it did not have jurisdiction to order the IRS to pay a refund in CDP litigation. The Tax Court's holding in *Green-Thapedi* is wrong and misinterprets Congress' grant of jurisdiction in §§6330(d) and 6512(b). The Court should reject the Commissioner's contention that the separation of tax claims from collection actions and the Tax Court's refusal to determine the amount of a taxpayer's refund is of no consequence. Bifurcation of §6330(c)(2)(B)-based claims will extinguish Appellant's and most taxpayers' refund claims. *Greene-Thapedi v. Comm'r*, 126 T.C. 1, 20 n.4 (2006) (Vasquez, J., dissenting).[4] This result is contrary to the remedial purposes of Section 6330.

In *Greene-Thapedi*, 126 T.C. at 20 n.5 (Vasquez, J., dissenting), Judge Vasquez acknowledged that bifurcating tax claims could reasonably be anticipated to bar most litigant's refund claims:

> Accordingly, because taxpayers can claim that they overpaid their taxes ("paid more than was owed") in a sec. 6330 case, majority op. p. 18 note 19, **the doctrine of res judicata might bar taxpayers from initiating a refund**

---

[4] Judge Vasquez also observed: "Notably, sec. 6330(e)(1) does not provide for the suspension of the period of limitations for seeking a claim for credit or refund pursuant to sec. 6511 . . . It is very likely that after the time elapsed in the sec. 6330 proceedings most taxpayers' refund claims would be barred by the period of limitations contained in sec. 6511 or severely limited or eliminated by the look-back rules of sec. 6511(b)." *Id.*

> **suit in U.S. District Court or the U.S. Court of Federal Claims.** (Emphasis added).

Specifically, §6330(d)(1) gives the Tax Court the jurisdiction to review the IRS Appeals officer's determination. The judicial doctrine of res judicata applies to proceedings adjudicating income taxes:

> The general rule of res judicata applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that, when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac,* 94 U.S. 351, 352 (1876).

*Sunnen*, 333 U.S. at 597. When applied to tax litigation, "[i]ncome taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action." *Id.* at 598.  The Tax Court's bifurcation of Appellant's income tax liability is neither supported by, nor consistent with, precedent's governing the application of res judicata in tax cases.

Precedent suggests that res judicata applies to CDP hearings before the Office of Appeals because they are adjudicative in nature. *See Thompson v. Comm'r*, T.C. Memo. 2013-260. Res judicata applies to administrative proceedings that are adjudicative in nature. *See Delamater v. Schweiker*, 721 F.2d 50, 53 (2d Cir. 1983)

("The concept of administrative res judicata was first given express sanction by the Supreme Court in *United States v. Utah Construction & Mining Co*., 384 U.S. 394 (1966)"); *Light Sources, Inc. v. Cosmedico Light, Inc*., 360 F. Supp. 2d 432, 438 (D. Conn. 2005) (internal quotations and citations omitted) ("administrative proceedings may have res judicata effect if they are adjudicative in nature. When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose."); *Soules v. Connecticut, Dept. of Emergency Services and Public Protection*, 882 F.3d 52, 54 (2d Cir. 2018) ("In any event, the res judicata doctrine applies in administrative proceedings.").

Bifurcation of §6330(c)(2)(B)-based claims is contrary to the plain language of §6330(c)(2)(B). It is also contrary to the remedial purposes of §6330(c)(2)(B)[5] because the Tax Court's refusal to determine the amount of a taxpayer's refund could reasonably be anticipated to extinguish the taxpayer's refund claim.

---

[5] Section 6330 is remedial legislation. *Katz v. Comm'r,* 115 T.C. 329, 333 n. 8 (2000) ("Congress enacted secs. 6320 (pertaining to liens) and 6330 (pertaining to levies) to provide new protections for taxpayers with regard to collection matters."); S. Rept. 105–174, at 67 (1998), 1998–3 C.B. 537, 603 ("The Committee believes that taxpayers are entitled to protections in dealing with the IRS . . . The Committee believes that following procedures designed to afford taxpayers due process in collections will increase fairness to taxpayers.").

## Point V

### Section 6330(c)(2)(B) Must Be Read on the Context of the Congress' Grant of Procedural Due Process Rights in Sections 6212 and 6213, Not Just Section 6330

The Court should examine §6330(c)(2)(B) in the overall context of the Code's mandate to provide prepayment opportunities to litigate claims against the IRS and not in the limited context of §6330. Otherwise, Appellant and other taxpayers are left without the prepayment forum to litigate disputes against the IRS anticipated by Congress. The Court of Appeals for the Fourth Circuit held, on similar but clearly distinguishable facts, that jurisdiction to decide cases in which "underlying liability" has been raised is limited only to circumstances in which the IRS still seeks to collect the tax at issue. *McLane v. Comm'r*, 24 F.4th 316 (4th Cir. 2022). The Fourth Circuit opined that the phrase "underlying tax liability" must be read in the context in which it is used. *Id. at* 319. The challenge to the underlying liability and subsequent Tax Court jurisdiction to challenge the IRS's determination arises only when the taxpayer did not receive a previous opportunity to raise a challenge to the underlying liability. By allowing its jurisdiction to disappear when the IRS no longer seeks to collect, these taxpayers receive fewer procedural due process rights under both §6330 and the Code's deficiency procedures and it rewards the IRS for not sending a statutorily required notice of deficiency.

The context in which the Fourth Circuit reads the phrase "underlying tax liability" is too limited. It is not just within §6330 in which courts should look, but

in the context of the due process rights and deficiency procedures that the Code provides to taxpayers. As the Supreme Court has observed, "the words of a statute must be read ... with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133, (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809, (1989)). Here, Congress sought to provide procedures by which it determined tax and the manner in which taxpayers may challenge such determinations. The Code requires the IRS to send a notice of deficiency to taxpayers in which it seeks additional tax. 26 U.S.C. § 6212(a). The Tax Court has jurisdiction to redetermine the amount of tax owed. 26 U.S.C. § 6213. It was Congress' intent that taxpayers have a prepayment forum to litigate tax disputes. Here, like in *McLane*, the IRS is rewarded for not following the normal deficiency procedures and changing the taxpayer's return but not granting any opportunity to challenge such action.

*McLane* is further distinguishable on the grounds that the Fourth Circuit's decision depended on the IRS conceding the liability and abating the liability it admittedly improperly assessed. Further, the IRS refunded what it collected in satisfaction of that improper liability and abandoned its levy.

## Point VI

### The Tax Court's Decision Shields the IRS From the Consequences of Its Original Illegal Seizure of Appellant's Tax Payments

Taxpayer argued in the CDP hearing and in Tax Court that the IRS seizure of her tax payments was illegal and that any decision to uphold such a decision was without a basis in law. When taxpayers make voluntary payments to the IRS, he, she [or they in the case of joint taxpayers] have a right to direct the application of payments to whatever type of liability he, she, or they choose. *Muntwyler v. United States*, 703 F.2d 1030, 1032 (7th Cir. 1983) (citing *O'Dell v. United States,* 326 F.2d 451, 456 (10th Cir.1964)). It is without question that Appellant's payments to the IRS were 1) voluntary; 2) from funds held jointly with her husband; and 3) clearly designated to be applied fully to her tax liability and not her husband's. The manner in which the payments were made was unambiguous and the tax returns that she and her husband separately filed clearly designated the entirety of the joint tax payments to Appellant, with none to her husband.

In addition to the clear precedent requiring the IRS to apply Taxpayer's voluntary tax payments in the manner in which she designated, the IRS decision to seize her payments on the specious grounds that her husband had "offered" them to the IRS is also without basis in fact and law. The IRS was legally prohibited from taking Taxpayer's payments and giving them to her husband because the couple's property was in *custodia legis* at the time and her husband was legally prohibited

28

from offering them to the IRS (there are no facts that support the IRS's argument that Appellant's husband offered the money to the IRS). To hold that Taxpayer has no opportunity to review the initial seizure of her property and the subsequent seizures while the case was pending in Tax Court is wrong.

Gennardo had no right to "offer" Taxpayer's estimated tax payments to the IRS. Property is considered *in custodia legis* when it is 'in the custody of the law.' *Wilzig v. Sisselman,* 209 N.J.Super. 25, 31, 506 *A*.2d 1238 (App.Div.), <u>cert. denied,</u> 104 *N.J* 417, 517 *A*.2d 415 (1986). It is a general rule that money or other property in the hands of an officer of a court is regarded as being in *custodia legis* and, in consequence, ordinarily cannot be reached by execution absent legislative authority. *Naglieri v.Trabattoni,* 20 N.J.Super. 173, 176, 89 *A*.2d 463 (App. Div. 1952). The IRS was aware of the status of the property when Taxpayer's husband filed IRS Form 56 – *Notice Concerning Fiduciary Relationship* - indicating that a court had appointed a receiver of the property.

The Tax Court's decision compounds the IRS's illegal seizure of Appellant's tax payment. Now that the Tax Court has held that it does not have jurisdiction to decide this issue that was raised in the collection due process hearing, Appellant has no forum in which to litigate the original illegal seizure and now this illegal seizure.

## Point VII

**The Tax Court's Decision That the Case is Moot Violates the Administrative Procedures Act Mandate to Set Aside Agency Action That is Without Basis in Law**

The Tax Court's decision prevents it from carrying out its duties under the Administrative Procedures Act ("APA"). The APA provides that a reviewing court must set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A). Agency determinations based on factual errors are, as a matter of law, arbitrary and capricious. *Borlem S.A. v. United States*, 913 F.2d 933, 941 (Fed. Cir. 1990) (decided under an identical standard of review as 5 U.S.C. §706); *Hill v. Boy*, 144 F.3d 1446, 1450-51 (11th Cir. 1988); *Achacoso-Sanchez v. INS*, 779 F.2d 1260, 1266 (7th Cir. 1985) ("Action on the basis of a falsehood is action without a rational explanation."). In the CDP context, the Tax Court has recognized that an abuse of discretion occurs when the exercise of discretion is without sound basis in fact or law. *Freiji v. Commissioner*, 125 T.C. 14, 23 (2005). The Tax Court's decision that the case is moot prevents it from ever deciding whether the IRS's actions were arbitrary and capricious and not in accordance with the law, as is its duty under the APA. As a result, the Taxpayer has not received a meaningful opportunity to challenge agency action, and the Tax Court has not fulfilled its duty to act as a pre-payment forum for taxpayers to litigate their disputes.

**Conclusion**

The Tax Court's dismissal of this case on grounds of mootness was in error. Allowing the Commissioner to unilaterally determine whether a case is moot is antithetical to the concept of due process as contemplated by Congress when enacting section 6330. As a result, Taxpayer has not received a meaningful opportunity to challenge the IRS and be heard. This Court should reverse the Tax Court and remand with instructions to determine the Taxpayers underlying liability and adjudicate the issues she raised when invoking the Tax Court's jurisdiction.


Date: November 9, 2022                    s/ Frank Agostino
                                          Frank Agostino
                                          New Jersey Bar No.: 005921987
                                          Attorney for Petitioner-Appellant
                                          Agostino & Associates, P.C.
                                          14 Washington Place
                                          Hackensack, New Jersey 07601
                                          Tel: (201) 488-5400, x. 107

**Certificate of Compliance With Fed. R. App. P. 32(a) and 3d Cir. R. 31.1(c)**

It is hereby certified that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains XX,XXX words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii);

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using the Microsoft Word word processing program in 14-point font size and Times New Roman style;

3. A virus detection program, AVG, has been run on the electronic version of the Opening Brief for Petitioner-Appellant, as well as the related appendices, and no virus was detected; and

4. The text of the electronic version of the Opening Brief for Petitioner-Appellant, as well as the related appendices, are identical to the paper copies.

Date: November 9, 2022

                              s/ Frank Agostino
                              New Jersey Bar No.: 005921987
                              Attorney for Petitioner-Appellant
                              Agostino & Associates, P.C.
                              14 Washington Place
                              Hackensack, New Jersey 07601
                              Tel: (201) 488-5400, x. 107

**Certificate of Compliance With 3d Cir. R. 28.3(d)**

In accordance with 3d Cir. R. 28.3(d), it is hereby certified that counsel for

Petitioner-Appellant, Frank Agostino, is a member of the bar of the United States

Court of Appeals for the Third Circuit.

Date: November 9, 2022          s/ Frank Agostino
                                      Frank Agostino
                                      New Jersey Bar No.: 005921987
                                      Attorney for Petitioner-Appellant
                                      Agostino & Associates, P.C.
                                      14 Washington Place
                                      Hackensack, New Jersey 07601
                                      Tel: (201) 488-5400, x. 107

## Certificate of Service

It is hereby certified that on November 9, 2022, I electronically filed the foregoing Opening Brief for Petitioner-Appellant, as well as the attached Appendix for Petitioner-Appellant, Volume I, with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the CM/ECF system. Counsel for the Appellee is a registered CM/ECF user and will be served by the CM/ECF system.

It is further hereby certified that, no later than five days after electronic filing of the same, I will mail to the Clerk of the Court of the United States Court of Appeals for the Third Circuit seven paper copies of the foregoing Opening Brief for Petitioner-Appellant, as well as the attached Appendix for Petitioner-Appellant, Volume I.

Date: November 9, 2022

                                s/ Frank Agostino
                                New Jersey Bar No.: 005921987
                                Attorney for Petitioner-Appellant
                                Agostino & Associates, P.C.
                                14 Washington Place
                                Hackensack, New Jersey 07601
                                Tel: (201) 488-5400, x. 107