Docket No. 22-2244

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

JENNIFER ZUCH,

Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE,

Appellee.

---

On Appeal from the United States Tax Court (Docket No. 25125-14)
Honorable Lewis R. Carluzzo, United States Tax Court Judge

---

### BRIEF OF THE LEGAL SERVICES CENTER OF HARVARD LAW SCHOOL AS COURT APPOINTED *AMICUS CURIAE* IN SUPPORT OF NEITHER PARTY

---

Audrey Patten
*Counsel for Amicus*
Tax Litigation Clinic
The Legal Services Center of Harvard Law School
122 Boylston St
Jamaica Plain, MA 02130
Phone: (617)390-2550
Fax: (617) 522-0715
E-mail: apatten@law.harvard.edu

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………….…………..……vi

INTEREST OF *AMICUS CURIAE*…………………………………………….x

ARGUMENT[1]…………………………………………………………….1

    I.      [Whether] the IRS must send a notice of deficiency under 26 U.S.C. § 6212 when it assesses a deficiency due to its rejection of an estimated payment listed on a taxpayer's return. If the IRS is not required to send such a notice, whether a taxpayer in that situation is always precluded from bringing a so-called deficiency proceeding under 26 U.S.C. §§ 6213 and 6214 in the Tax Court. **[restyled QUESTION 1]**……………..………1

    A. The IRS is not required to send a notice of deficiency under 26 U.S.C. §6212 when it makes an assessment due to its rejection of an estimated tax payment listed on a taxpayer's return……………………………………………….…1

    B. When the IRS is not required to send [a notice of deficiency], a taxpayer is precluded from bringing a so-called deficiency proceeding under 26 U.S.C. §§6213 and 6214 in the Tax Court…………………………………………….….2

    II.     [Whether] the Tax Court's precedent in *Greene-Thapedi v. Comm'r*, 126 T.C. 1 (2006) is correct regarding the Tax court's lack of overpayment and refund jurisdiction for proceedings under 26 U.S.C. § 6330, and in particular, whether the Tax Court retains jurisdiction under 26 U.S.C. § 6512(b)(1) to issue a refund in a so-called collection due process proceeding where a taxpayer's deficiency was summarily assessed under 26 U.S.C. § 6213(b)(1). **[restyled QUESTION 2]**……………………...4

---

[1] In the Table of Contents, each question the Court asked in its June 1, 2023 appointment order is reproduced in full beside the Roman numeral heading. For purposes of brevity and clarity relative to FRAP 32(a)(7)(B)'s word count limitations, each question is restyled "Question X" next to the Roman numeral heading within the actual Argument section of the brief. Headings beside English alphabet letters are restatements from the original questions and retain their full form through the document.

A. The Tax Court's precedent in *Greene-Thapedi v. Comm'r*, 126 T.C. (2006) is wrong regarding the Tax Court's lack of overpayment and refund jurisdiction for proceedings under 26 U.S.C. §6330………………………..4

   *1. The payment of an underlying liability should not moot a CDP case if there was proper jurisdiction over the challenge to that liability………..5*

   *2. The Court retains overpayment jurisdiction in situations where the Court has jurisdiction to review the taxpayer's challenge to the underlying liability……………………………………………………7*

   *3. Courts have already moved beyond a strict reading of §6330 to expand Tax Court jurisdiction in CDP cases…………………………..10*

B. The Tax Court does retain jurisdiction under 26 U.S.C. §6512(b)(1) to issue a refund in a so-called collection due process proceeding where a taxpayer's deficiency was summarily assessed under 26 U.S.C. §6213(b)(1)………...12

III. [Whether] 26 U.S.C. § 6402(g), 26 U.S.C. §6512(b)(4), or any other provisions of the code bars the Tax Court from reviewing the IRS's setoff of a disputed liability during the pendency of a Tax Court proceeding under 26 U.S.C. §6330, and whether that conclusion turns on the application of refund jurisdiction under 26 U.S.C. § 6512(b) to proceedings under 26 U.S.C. § 6330. If the Tax Court is not barred, please address whether setoffs under §6402(a) must follow the common-law requirement that one party may not apply setoff when the other party disputes the existence and amount of the debts in question. **[restyled QUESTION 3]**……………………………………………………14

A. Neither 26 U.S.C. §6402(g), 26 U.S.C. §6512(b)(4), nor any other provisions of the code bar the Tax Court from reviewing the IRS's setoff of a disputed liability during the pendency of a Tax Court proceeding under 26 U.S.C. §6330…………………………………………………14

B. The conclusion that neither 26 U.S.C. § 6402(g), 26 U.S.C. §6512(b)(4), nor any other provisions of the code bar the Tax Court from reviewing the IRS's setoff of a disputed liability during the pendency of a Tax Court proceeding under 26 U.S.C. §6330 is not dependent on the

application of refund jurisdiction under 26 U.S.C. § 6512(b) to proceedings under 26 U.S.C. § 6330……………………………………16

C. Regarding Tax Court review, setoffs under §6402(a) do not follow the common-law requirement that one party may not apply setoff when the other party disputes the existence and amount of the debts in question..17

IV.    [Whether] The IRS's purported setoff of a disputed liability under 26 U.S.C. § 6402(a) during the pendency of a Tax Court proceeding under 26 U.S.C. § 6330 moots a petitioner's ability to challenge the liability in Tax Court.  Specifically address whether the Tax Court must analyze if Ms. Zuch was correct about her outstanding liability for the 2010 tax year and her entitlement to credit for the $50,000 in prepayments for the 2010 tax year to ascertain mootness.   If the purported setoff does not moot the challenge, please address what further relief is available from the Tax Court, whether a Tax Court ruling in Ms. Zuch's favor that did not order a refund would have preclusive effect in a suit brought by Ms. Zuch under 28 U.S.C. §1346(a)(1), whether such a suit would be timely, and the applicability of the "informal-claim doctrine" to the amount Ms. Zuch could recover. **[restyled QUESTION 4]**………………………………17

A. The IRS's setoff of a disputed liability under 26 U.S.C. § 6402(a) during the pendency of a Tax Court proceeding under 26 U.S.C. § 6330 does not moot a petitioner's ability to challenge the liability in Tax Court……...17

B. The Tax Court must analyze if Ms. Zuch was correct about her outstanding liability for the 2010 tax year and her entitlement to credit for the $50,000 in prepayments for the 2010 tax year to ascertain mootness…………………………………………………………………...18

C. If the purported setoff does not moot the challenge, then further relief is available from the Tax Court…………………………………………...18

D. A Tax Court ruling in Ms. Zuch's favor that did not order a refund would have preclusive effect in a suit brought by Ms. Zuch under 28 U.S.C. §1346(a)(1)…………………………………………………………...20

E. Such a suit would be timely only if the "informal-claim doctrine" to the amount Ms. Zuch could recover applies………………………………..21

V.      [Whether] Ms. Zuch would not be barred from obtaining refunds for her post-2010 overpayments in a subsequent action in federal district court if the Court affirmed the Tax Court's decision under review. **[restyled QUESTION 5]**……………………………………………………..22

VI.     [Whether] The Tax Court's jurisdiction under 26 U.S.C. § 6330 depends on the continued existence of a levy, and whether §6330 independently confers such jurisdiction for (i) outstanding verification challenges under 26 U.S.C. § 6330(c)(1) or (ii) outstanding liability challenges under 26 U.S.C. §6330 (c)(2)(B). Specifically, address what, if anything, a "Notice of Determination" under 26 U.S.C. § 6330(c)(3) enables the Tax Court to opine on other than the propriety of a levy. **[restyled QUESTION 6]**...23

        A. The Tax Court's jurisdiction under 26 U.S.C. § 6330 does not depend on the continued existence of a levy………………………………...23

        B. Section 6330 independently confers such jurisdiction for (i) outstanding verification challenges under 26 U.S.C. § 6330(c)(1) or (ii) outstanding liability challenges under 26 U.S.C. §6330 (c)(2)(B)………………………………………………………………..23

        C. A "Notice of Determination" under 26 U.S.C. § 6330(c)(3) enables the Tax Court to opine on §6330(c)(1) verification requirements as well as §6330(c)(2) issues as well as the propriety of a levy………..25

VII.    The significance of *Polselli v. I.R.S.*, 598 U.S. _, 142 S. Ct. 1231 (2023) for the issues set forth above. **[restyled QUESTION 7]**………………..25

CERTIFICATE OF SERVICE……………………………………………………28

CERIFICATE OF BAR MEMBERSHIP…………………………………………29

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS……..30

CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS…………………31

CERTIFICATE OF VIRUS CHECK……………………………………………...32

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Barry v. Comm'r*, 1 B.T.A. 156, 156 (1924)……………………………………...10

*Boechler, P.C. v. Comm'r,* 142 S.Ct. 1493 (2022)………………………………..12

*Churchill v. Comm'r,* T.C. Memo 2011-182………………………………………...11

*Estate of Di Rezza v. Comm'r*, 78 T.C. 19 (1982)………………………………….2

*Exxon Mobil Corp. v. Comm'r*, 689 F.3d 191(2nd Cir. 2012)……………………..8

*Francel v. Comm'r*, T.C. Memo 2019-35…………………………………………….9

*Giamelli v. Comm'r*, 129 T.C. 107 (2007)………………………………………..24

*Greene-Thapedi v. Comm'r*, 126 T.C. 1 (2006)……………………………...4,5,6,7

*Hallmark Research Collective v. Comm'r*, 159 T.C. No. 6 (2022)………………..22

*Hoyle v. Comm'r*, 131 T.C. 197 (2008)…………………………………………19, 24

*Laing v. United States*, 423 U.S. 161 (1976)……………………………………….2

*Luque v. Comm'r*, T.C. Memo 2016-128…………………………………………..15

*Jones v. Liberty Glass Company,* 332 U.S. 524 (1947)……………………………7

*Katz v. Comm'r*, 115 T.C. 329 (2000)……………………………………………...8

*Mclane v. Comm'r*, 24 F 4th 216 (4th Cir. 2022)…………………………………..4

*Montgomery v. Comm'r,* 122 T.C. 1 (2004)………………………………………..3

*Polselli v. I.R.S.*, 598 U.S. _, 142 S. Ct. 1231 (2023)………………………….25, 26

*Robinson v. Comm'r*, 2023 U.S. App. LEXIS 13522 (June 1, 2023)…………..22

*Sebelius v. Auburn Reg'l Med. Ctr.,* 133 S.Ct. 817……………………………………12

*Sunoco Inc v. C.I.R.,* 663 F.3.d. 181 (3rd Cir., 2011)……………………………..16

*Taylor v. Sturgell,* 553 U.S. 880 (2008)……………………………………………..20

*Techerpenin v. Knight*, 389 U.S. 332 (1967)…………………………………………….7

*Tipton v. Atchinson T.&S.F.Ry. Co.*, 298 U.S. 141 (1936)………………………..17

*United States v. Dalm*, 494 U.S. 596 (1990)………………………………………...16

*United States v. Erie Forge Co.,* 191 F.2d 627 (3rd Cir. 1951)…………………….2

*U.S. v. Kales*, 314 U.S. 186 (1941)………………………………………………..21

*Vest v. Comm'r*, T.C. Summ.Op. 2018-18………………………………………..15

*Vigon v. Comm'r*, 149 T.C. 97 (2017)……………………………………………...3,6,22

*Washington v. Comm'r*, 120 T.C. 137 (2003)……………………………………….9

*Williams v. Comm'r*, 92 T.C. 920 (1989)…………………………………………..11

*Winn-Dixie Stores Inc. v. C.I.R.,* 110 T.C. 291 (1998)……………………………15

*Winter v. Comm'r*, 135 T.C. 238, 244 (2010)……………………………………..13

*Wright v. C.I.R.*, 571 F.3d 215 (2009)……………………………………………...8

*Zapara v. Comm'r*, 652 F.3d 1042 (9th Cir. 2011)………………………………..11

## STATUTES

26 U.S.C:

§6015……………………………………………………………………9

§6211…………………………………………………………………1,2,3

§6211(a).…………………………………………………………………..1

§6211(b)(1)…………………………………………………………………1

§6212……………………………………………………………………1.3

§6212(a).…………………………………………………………………..1

§6213…………………………………………………………………...2

§6213(a).…………………………………………………………....2,12,13

§6213(b)(1)…………………………………………………………...12,13

§6213(g)…………………………………………………………………13

§6330…………………………………………………………….passim

§6330(c)(1)………………………………………………………18,19,23,24,25

§6330(c)(2)(A)………………………………………………………6,9,11,23,25

§6330(c)(2)(B)………………………………………………………..passim

§6330(c)(3)………………………………………………………...19,25

§6330(d)(1)………………………………………………………...5,11,12,24

§6330(f)…………………………………………………………………11

§6401(a)…………………………………………………………………..7

§6402(a)………………………………………………………14,15,17,21

§6402(g)………………………………………………………………...14,15,16

§6512(b)(1)…………………………………………………………….9,12

§6512(b)(2)…………………………………………………………………………..9

§6512(b)(4)……………………………………………………………14,15,16,17

§6651(a)…………………………………………………………………………..2

§6665(b)………………………………………………………………………..2

§7422(a)………………………………………………………………………21

§7422(d)………………………………………………………………………14

§7609(a)(1))…………………………………………………………………..25

§7609(c)(2)(D)(i)……………………………………………………………25,26

28 U.S.C. §1346(a)(1)………………………………………………………20

The Revenue Act of 1924, 68 P.L. 176, 43 Stat. 253, 68 Cong. Ch.234…………10

The Revenue Act of 1926, 69 P.L. 20, 44 Stat. 9, 69 Cong. Ch. 27………………10

## OTHER AUTHORITIES

Internal Revenue Manual, I.R.M. 25.5.4.4.1 (10-1-2020)……………………..12,13

Treas. Reg. §301.6211-1(a)…………………………………………………………...1

# INTEREST OF *AMICUS CURIAE*[2]

The Tax Litigation Clinic ("the Clinic") at the Legal Services Center was formed in 2015 to represent low-income taxpayers before the Internal Revenue Service and in tax matters before the courts.  The Clinic represents taxpayers in deficiency, Collections Due Process, and "innocent spouse" cases in the Tax Court and in the United States Courts of Appeals.

On June 1, 2023, this Court appointed the Clinic, through its director, Audrey Patten, as *Amicus Curiae* in this case.  The Clinic was asked to address seven questions, each of which is answered in turn in the Argument below.  The Clinic has answered each question without purporting to support either the Appellant or Appellee in this case.

---

[2] Pursuant to FRAP 29(a)(4)(E), this is to affirm that no party's counsel authored this brief in whole or in part.  No party and no party's counsel contributed money that was intended to fund preparing or submitting this brief.  This amicus brief does not purport to present the positions or views of Harvard Law School or Harvard University, if any.

## ARGUMENT

### I. QUESTION 1

#### A. The IRS is not required to send a notice of deficiency under 26 U.S.C. §6212 when it makes an assessment due to its rejection of an estimated tax payment listed on a taxpayer's return.

The Internal Revenue Service ("IRS") is not required to send a notice of deficiency under 26 U.S.C. §6212[3] when it rejects estimated tax payments listed on a taxpayer's return because, pursuant to §6211, estimated tax payments are not included in the calculation of a deficiency. Section 6212(a) authorizes the IRS to send a notice once the Secretary has determined there is a "deficiency." Under the Internal Revenue Code, "deficiency" is defined in §6211(a). It consists of the difference between the amount of tax due a taxpayer, through self-assessment, states on their return, plus any amount previously assessed, over the amount of any rebates. However, §6211(b)(1) specifically excludes estimated income tax from the calculation, stating, in part, "[t]he tax imposed by subtitle A and the tax shown on the return shall both be determined without regard to payments on account of estimated tax." The exclusion of estimated tax payments in the deficiency calculation holds true whether an original or an amended return is involved. *See* Treas. Reg. §301.6211-1(a).

---

[3] Unless otherwise indicated, all section references are to the Internal Revenue Code, Title 26.

Likewise, an addition to tax under §6651(a) resulting from the exclusion of estimated tax payments does not trigger a notice of deficiency requirement because the underlying liability to which it is attached is not a deficiency.   Pursuant to §6665(b), additions to tax assessed under §6651 are not subject to deficiency procedures except to the extent they derive from a deficiency and only "that portion of such addition which is attributable to a deficiency in tax described in section 6211." §6665(b)(1).  *See also,  United States v. Erie Forge Co.,* 191 F.2d 627, 630 (3rd Cir. 1951); *Estate of Di Rezza v. Commissioner*, 78 T.C. 19, 26 (1982).

**B. If the IRS is not required to send [a notice of deficiency], a taxpayer is precluded from bringing a so-called deficiency proceeding under 26 U.S.C. §§6213 and 6214 in the Tax Court.**

The United States Supreme Court has stated that a notice of deficiency is jurisdictional to a suit under §6213.  *Laing v. United States*, 423 U.S. 161, 165 n.4 (1976) ("A deficiency notice is of import primarily because it is a jurisdictional prerequisite to a taxpayer's suit in the Tax Court for redetermination of his tax liability.").  However, the inability to bring a deficiency proceeding under §6213(a) does not preclude a taxpayer from contesting their underlying liability in the Tax Court in a Collections Due Process proceeding under §6330(c)(2)(B) (hereinafter "CDP cases").  The ability to challenge liability is not limited to situations in which a notice of deficiency would be required because

2

§6330(c)(2)(B) reads that a taxpayer may challenge their underlying liability if they "did not receive any statutory notice of deficiency for such tax liability *or did not otherwise have an opportunity to dispute such tax liability*." [emphasis added]

The Tax Court does not require that a taxpayer have a deficiency to invoke their right to challenge liability under §6330(c)(2)(B). *Montgomery v. Commissioner,* 122 T.C. 1 (2004). In *Montgomery*, the taxpayers brought a CDP case challenging liability for a self-assessment and attendant penalties and interest on their joint income tax return. The court acknowledged that a self-assessment does not fit the definition of a deficiency under §6211, and therefore cannot trigger §6212's notice requirement. However, the Court noted that "underlying liability" is not defined in §6330 and has no clarification in legislative history. *Id,* at 7. *See also Vigon v. Commissioner*, 149 T.C. 97 (2017) (finding the Tax Court has jurisdiction under §6330(c)(2)(B) over §6702(a) penalties, which do not create a deficiency.) Therefore, liability that derives from the exclusion of estimated tax payments relative to the self-assessed amount of tax due on a return would not be barred from consideration in a CDP case just because it does not meet the requirements of a deficiency.

3

## II.    QUESTION 2

### A.  The Tax Court's precedent in *Greene-Thapedi v. Comm'r*, 126 T.C. (2006) is wrong regarding the Tax Court's lack of overpayment and refund jurisdiction for proceedings under 26 U.S.C. §6330.

The Tax Court's conclusion in *Greene-Thapedi* that it lacks overpayment jurisdiction in §6330 is too narrow for §6330 to be workable in all the situations Congress intended that it be used.[4]  Specifically, *Greene-Thapedi* treats case and controversy jurisdiction in all CDP cases as tied to the ongoing levy action that initially triggered the taxpayer's use of  §6330 procedures and it treats overpayment jurisdiction as requiring an express grant from Congress within §6330. *Greene-Thepadi*, 126 T.C. at 7-8.  Both these conclusions by the Tax Court frustrate the intent of §6330 to provide taxpayers with broad relief if they never had a prior opportunity to challenge their underlying liability.  These conclusions also ignore other situations where the Tax Court has exerted overpayment jurisdiction without an express grant of authority.  Finally, courts have expanded the Tax Court's role in CDP cases, even without any direct statutory mandate, to increase taxpayers' rights.

---

[4] *Amicus* acknowledges that this Court, citing *Greene-Thepadi* as well as the Fourth Circuit case *Mclane v. Comm'r*, 24 F 4th 216 (4th Cir. 2022), recently declined in a footnote to review an appellants' challenge to underlying liability under §6330(c)(2)(B) after a payment he made zeroed out his underlying liability in a CDP case.  *Ahmed v. Comm'r,* 64 Fth 477, 487 n. 10 (2023). To the extent that *Mclane* relies on *Greene-Thepadi*, *Amicus* contends that *Mclane* was wrongly decided and should not be followed for the reasons set forth in Discussion Section II.A, *infra*.

In *Greene-Thapedi*, a taxpayer brought a CDP case in the Tax Court regarding a potential levy action on the 1992 tax year. She challenged the imposition of interest and penalties and sought a refund of what she alleged to be an overpayment.   However, at some point after she filed the petition, the IRS offset a refund from her 1999 personal income tax return and applied it to the 1992 tax year, thus satisfying the outstanding balance on the liability. The Tax Court therefore ruled that the case was moot and that it did not have overpayment jurisdiction to order a refund of the taxpayer's lost 1999 refund, even if she had not really had a valid liability for the 1992 tax year. *Id.*

1. *The payment of an underlying liability should not moot a CDP case if there was proper jurisdiction over the challenge to that liability.*

The *Greene-Thapedi* Court's holding that the case was moot only makes sense, however, if the Court viewed the challenge to underlying liability under §6330(c)(2)(B) as dependent on the continuation of the levy action.  In other words, the Court saw §6330(c)(2)(B) as only a defense to a levy.  However, this view ignores the fact that a challenge to underlying liability using §6330(c)(2)(B) creates its own subject matter jurisdiction independent of the continuance of a levy action.  Section 6330(c) delineates three separate bases that the appeals officer should take into consideration at the administrative hearing preceding a CDP Tax Court case. These basis for subject matter jurisdiction then later become the same bases for Tax Court review under §6330(d)(1).

5

Of these three bases, the second, §6330(c)(2)(B), is "the issues raised under paragraph (2)." Paragraph 2, is entitled "Issues at Hearing," and includes as two separate and independent issues "challenges to the appropriateness of collections," at §6330(c)(2)(A)(ii), and "Underlying Liability," at §6330(c)(2)(B). Nowhere does the statute indicate that determining a taxpayer's "underlying liability" is dependent on determining whether a collections action is still appropriate.

The Tax Court has recognized after *Greene-Thapedi* that a CDP case based on challenges to underlying liability might not be mooted simply because a collection action is no longer active. *Vigon*, 149 T.C. at 112. In *Vigon,* a taxpayer had invoked §6330 procedures following a Notice of Federal Tax Lien he received pursuant to §6320. After the IRS withdrew the lien, it moved to dismiss the case as moot. The Tax Court separated its jurisdiction between reviewing collections actions under §6330(c)(2)(A) and challenges to underlying liability under §6330(c)(2)(B), finding that a "liability issue may remain even after the collections issues have been resolved or become moot." *Id.* at 105. In doing so, the court noted that that challenges to underlying liability are their own category in the IRS determination that the Court must review. *Id.* at 107.

*2. The Court retains overpayment jurisdiction in situations where the Court has jurisdiction to review the taxpayer's challenge to the underlying liability.*

While §6330 explicitly grants the Tax Court jurisdiction to determine underlying liability in a CDP case, nowhere does the statute prohibit determining whether there was an overpayment on that underlying liability and then granting a refund. Other than a provision dealing with payments after the statute of limitations on collection has expired in §6401(a), the term "overpayment" is undefined in the code. However, the United States Supreme Court has recognized it as "meaning any payment in excess of that which is properly due." *Jones v. Liberty Glass Company,* 332 U.S. 524, 531 (1947).

The conclusion in *Greene-Thapedi* that the Tax Court could not exercise overpayment jurisdiction when it does properly have jurisdiction over determining the underlying liability, leads to absurd results. After all, as Judge Vasquez noted in his Dissent, "[i]t would be illogical that we could conclude that the Commissioner has collected too much money, but we could not enter a decision that the taxpayer has overpaid his/her tax." *Greene-Thapedi* 126 T.C. at 27 (J. Vasquez, dissenting). By preventing overpayment jurisdiction in a CDP case brought under §6330(c)(2)(B), the Tax Court is unable to make a complete and correct determination as to the underlying liability.

Section §6330 is remedial legislation. The Tax Court has acknowledged that Congress enacted §6330 "to provide new protections for taxpayers with regard to collection matters." *Katz v. Commissioner*, 115 T.C. 329, 333 n.8 (2000). Section 6330 should therefore be read broadly in favor of taxpayers for whose benefit the statute was enacted. *Techerpenin v. Knight*, 389 U.S. 332, 336 (1967) ("Remedial legislation should be construed broadly to effectuate its purposes.") *See also*, *Exxon Mobil Corp. v. Commissioner*, 689 F.3d 191, 199 (2nd Cir. 2012) ("…we are particularly mindful of the longstanding canon of construction that where 'the words [of a tax statute] are doubtful, the doubt must be resolved against the government and in favor of the taxpayer.") Absent a prohibition by Congress, §6330 therefore should be read in conjunction with other provisions of the Code, including those that provide refund jurisdiction. The Second Circuit recognized this principle in *Wright v. C.I.R.*, 571 F.3d 215 (2009). In *Wright*, a taxpayer brought a CDP case in which he raised the issue of interest abatement under §6404. The Tax Court had declined jurisdiction absent a grant of authority from Congress, but the Second Circuit reversed, ruling that procedures under §6330 did incorporate authority to determine whether the taxpayer could be entitled to interest abatement and, if so, whether he was entitled to a refund.

The Tax Court could therefore have concurrent jurisdiction in a CDP case and provisions that allow for refunds. For example, overpayment jurisdiction in

deficiency cases derives from §6512(b)(1) and the ability to order a refund in §6512(b)(2). If the IRS does not comply with a Tax Court overpayment determination by issuing a refund within 120 days, §6512(b)(2) grants the Tax Court the power to enforce its determination by issuing an order to the IRS to grant the refund. Such overpayment jurisdiction should be inferred in CDP cases as well because of their remedial function.

Likewise, CDP cases involving "appropriate spousal defenses" under §6330(c)(2)(A)(i) must by necessity pull from another section of the Code that includes refund jurisdiction. Spousal defenses include "innocent spouse" defenses under §6015. *See Francel v. Comm's*, T.C. Memo 2019-35 at 11. Section 6015(g)(1) allows refunds when a taxpayer is relieved of joint and several liability under §6015(b) or §6015(f), but has no explicit statement that the Tax Court has overpayment jurisdiction. Despite that lack of clear authority, §6015 can result in a refund even in situations where there is no deficiency at issue, such as in an underpayment scenario. *See Washington v. Commissioner*, 120 T.C. 137, 155-160 (2003). Logically, if §6015(b) or §6015(f) were raised as a spousal defense in a CDP proceeding, the Tax Court would be within its rights to find an overpayment and order a refund notwithstanding that there is no reference to overpayment jurisdiction in §6330.

9

Finally, the history of the Tax Court shows that its ability to determine an overpayment and order a refund is a default power.  Section 900 of the Revenue Act of 1924 created the Tax Court's predecessor, The Board of Tax Appeals. Almost immediately, the Board of Tax Appeals assumed overpayment jurisdiction and the ability to order a refund. *See Barry v. Comm'r*, 1 B.T.A. 156, 156 (1924) ("We think it was clearly the intention of Congress in creating the Board that, on appeals by taxpayers, we should consider every question necessary to a correct and complete determination of any deficiency which the Commissioner proposes to assess.")  The Revenue Act of 1926 then tailored the Board's overpayment jurisdiction and limited it to only the tax year in question.  This history provides context for how to read §6330(c)(2)(B).  Unless Congress explicitly revokes overpayment and refund jurisdiction, the assumption should be that the Tax Court retains it as part of correctly addressing all issues pertinent to a case challenging underlying liability in CDP cases.

3. *Courts have already moved beyond a strict reading of §6330 to expand Tax Court jurisdiction in CDP cases.*

Various federal courts have expanded taxpayer rights to Tax Court review in CDP cases even when §6330 either lacks specific language expanding the right or contains ambiguity surrounding the right. For example, the Tax Court found that it could remand a case back to an appeals officer if the taxpayer's circumstances had changed between the time of the appeals hearing and the CDP case before the

10

court. *Churchill v. Comm'r,* T.C. Memo 2011-182.  In *Churchill*, a taxpayer

seeking a collections alternative, went through a divorce between the time the CDP

hearing officer rejected his offer and his Tax Court case.  As §6330 is silent as to

the court's power to remand, the court found that "[a]bsent limiting statutes, courts

generally have 'the inherent authority to issue such orders as they deem necessary

and prudent to achieve the orderly and expeditious disposition of cases." *Id.* at 5,

*quoting Williams c. Comm'r*, 92 T.C. 920, 293 (1989).

The Ninth Circuit Court of Appeals meanwhile interpreted the words "proposed

levy" in §6330(c)(2)(A) to include a levy that had already been completed.  *Zapara*

*v. Comm'r*, 652 F.3d 1042 (9th Cir. 2011).  In that case, the IRS imposed a

jeopardy levy, as allowed by §6330(f), where a levy takes place before the

opportunity for a CDP hearing in certain circumstances. The IRS argued that the

words "proposed levy" blocked the court from reviewing a jeopardy levy, because

it had been completed.  The Ninth Circuit however interpreted the language

loosely, finding that "the word 'proposed' serves only to clarify that the hearing

should be about the specific levy at issue, as opposed to a past levy on other

property." *Id.* at 1045. Furthermore, it found that the Tax Court has equitable

powers to fashion an appropriate remedy in CDP for IRS procedural violations.  *Id.*

at 1045-1046.

Finally, in 2022 the U.S. Supreme Court expanded taxpayer rights in CDP cases significantly by finding that §6330(d)(1)'s rule that taxpayers must file a petition in the Tax Court to initiate a CDP case is not jurisdictional and is subject to equitable tolling. *Boechler, P.C. v. Comm'r,* 142 S.Ct. 1493 (2022) In so finding, the Court emphasized that "[s]ection 6330(d)(1) does not expressly prohibit equitable tolling…The deadline also appears in a section of the Tax Code that is 'unusually protective' of taxpayers and a scheme in which 'laymen, unassisted by trained lawyers,' often 'initiate the process.'" *Id.* at 1500, *quoting Sebelius v. Auburn Reg'l Med. Ctr.,* 133 S.Ct. 817.

In all three of these examples, courts looked beyond any ambiguity in §6330 to find expansive Tax Court jurisdiction that favored taxpayers.

**B. The Tax Court does retain jurisdiction under 26 U.S.C. §6512(b)(1) to issue a refund in a so-called collection due process proceeding where a taxpayer's deficiency was summarily assessed under 26 U.S.C. §6213(b)(1).**

If jurisdiction for a CDP case was otherwise proper, then analysis of the Tax Court's overpayment jurisdiction and ability to order a refund is the same whether the original assessment of the underlying liability derived from a deficiency assessed under §6213(a) or a math error assessed under §6213(b)(1). An assessment under §6213(b)(1) arises out of a mathematical or clerical error. IRS notices that an assessment will be made under this provision are not considered notices of deficiency and therefore do not come with the right to petition the Tax

Court under its deficiency proceedings in §6213(a). However, as explained in the Internal Revenue Manual, if a taxpayer requests abatement within 60 days of receiving a math error notice, the IRS must abate the assessment. I.R.M. 25.5.4.4.1 (10-1-2020). If the taxpayer does so without substantiation, the IRS can issue a notice of deficiency. *Id*.

This is because §6213(g) lists return errors that, if corrected, would lead to an increase in tax over what was reported on the return but which can be excepted from the requirement that the IRS send a notice of deficiency. Therefore, "math errors" under §6213(b)(1) are still deficiencies even though they are a list of exceptions to the notice requirement in §6213(a). If a taxpayer brings a deficiency assessed as a math error before the court – through its combination with another deficiency assessed under §6213(a), or its own notice of deficiency, or through a challenge to underlying liability under §6330(c)(2)(B) – then the court will generally retain jurisdiction over "all items necessary to determine the correct tax." *Winter v. Commissioner*, 135 T.C. 238, 244 (2010) (finding that a Schedule K-1 adjustment otherwise subject to a math error notice was properly before the Court after the IRS issued a notice of deficiency). The jurisdiction over an assessment made under §6213(b)(1) should therefore include overpayment jurisdiction and the ability to order a refund. *Id.*

## III. QUESTION 3

### A. Neither 26 U.S.C. §6402(g), 26 U.S.C. §6512(b)(4), nor any other provisions of the code bar the Tax Court from reviewing the IRS's setoff of a disputed liability during the pendency of a Tax Court proceeding under 26 U.S.C. §6330.

Neither §6402(g) nor §6512(b)(4) block the Tax Court from finding overpayments or ordering refunds in situations where the IRS has offset an income tax refund from one year to apply to another year's liability pursuant to §6402(a). What these statutes do is block the Court from restraining or reviewing the offset itself. However, once the offset occurs, it converts into a tax payment for the year at issue and can be the subject of refund suits. *See* §7422(d) ("The credit of an overpayment of any tax in satisfaction of any tax liability so satisfied, for the purpose of any suit for refund of such tax liability, be deemed to be a payment in respect of such tax liability at the time such credit is allowed.") It is therefore later refundable as an overpayment should it be in excess of the liability to which it is paid.

First, §6402(g) is inapplicable to the instant case. This prohibition on the Tax Court's overpayment jurisdiction for tax refund offsets only applies to offsets made under subsections (c), (d), (e), or (f). Those provisions deal with situations where the IRS offsets a taxpayer's overpayment because of amounts due to other entities, including state child support enforcement divisions, other federal agencies, and state tax authorities. Those offsets do not result in tax payments and therefore

14

should not be subject to the Tax Court's overpayment jurisdiction and its ability to order a refund. As the Tax Court has noted, in these situations, the Commissioner is acting "in the limited and purely ministerial role of collecting those debts referred to him by other Federal agencies." *Vest v. Commissioner*, T.C. Summ.Op. 2018-18 at 3.  Because §6402(g) is about the IRS offsetting refunds for non-tax payments, a taxpayer disputing the offset must challenge the underlying debt with the agency which received the payment from the IRS rather than challenging the offset itself or fighting over the underlying debt with the IRS.

Section 6512(b)(4), meanwhile, does apply to the instant case, but that is not fatal to the Tax Court's ability to determine an overpayment and order a refund of a payment derived from an offset under §6402(a).[5]  On one hand, §6512(b)(4) is explicit that the Tax Court "shall have no jurisdiction under this subsection to restrain or review any credit or reduction made by the Secretary under section 6402."  Indeed, the Tax Court has acknowledged that it cannot stop a refund offset that occurs during deficiency procedures.  *See e.g. Winn-Dixie Stores Inc. v. C.I.R.,* 110 T.C. 291, 294 (1998). Nor can the Tax Court dictate which tax year an offset is applied to or how much of a refund is offset.  *See e.g. Luque v. Commissioner*, T.C. Memo 2016-128.  As this Court has made clear, "[t]he IRS has broad discretion in determining whether to credit an overpayment for one tax liability

---

[5] As discussed on page 9, *supra*, §6512(b) should apply in CDP cases.

toward a different liability of the taxpayer and the IRS's discretion cannot be challenged in the Tax Court." *Sunoco Inc v. C.I.R.,* 663 F.3.d. 181, 189 (3rd Cir., 2011) [internal citations omitted].

There is a difference, however, between restraining an offset, or reviewing the propriety of the offset, and ordering a refund once that offset has been applied to a liability for a tax year at issue properly before the Tax Court and thus converted into a potential overpayment.  Once a taxpayer's refund from a given tax year has been offset and applied to a liability for another tax year, that taxpayer has indeed made a payment.  Therefore, if it is later determined by the Tax Court that the year in question did not have a liability equal to or more than the offset, then that taxpayer has made an overpayment because "[t]he commonsense interpretation is that a tax is overpaid when a taxpayer pays more than is owed, for whatever reason or no reason at all."  *United States v. Dalm*, 494 U.S. 596, 609 n.6 (1990).

**B. The conclusion that neither 26 U.S.C. § 6402(g), 26 U.S.C. §6512(b)(4), nor any other provisions of the code bar the Tax Court from reviewing the IRS's setoff of a disputed liability during the pendency of a Tax Court proceeding under 26 U.S.C. §6330 is not dependent on the application of refund jurisdiction under 26 U.S.C. § 6512(b) to proceedings under 26 U.S.C. § 6330.**

As explained in Discussion Section III.A,. *supra*, neither §6402(g) nor §6512(b)(4) in themselves bar overpayment or refund jurisdiction in Tax Court

cases.   That conclusion is irrespective of whether §6512(b) applies to CDP

proceedings.

**C. Regarding Tax Court review, setoffs under §6402(a) do not follow the common-law requirement that one party may not apply setoff when the other party disputes the existence and amount of the debts in question.**

Any such common-law requirement is superseded by §6512(b)(4)'s clear denial

of jurisdiction for Tax Court review of offsets under §6402(a).  On its face, the

plain language of the statute creates an absolute bar to the Tax Court's jurisdiction

over the actual act of the offset by the IRS.  A common law rule is superseded by

an on-point statute.  *See e.g. Tipton v. Atchinson T.&S.F.Ry. Co.*, 298 U.S. 141,

146 (1936).  Again, however, once the offset is made, it may convert into an

overpayment for the tax year to which it was applied and thus the amount offset

may fall under the Tax Court's overpayment jurisdiction for that tax year.

**IV.    QUESTION 4**

**A. The IRS's setoff of a disputed liability under 26 U.S.C. § 6402(a) during the pendency of a Tax Court proceeding under 26 U.S.C. § 6330 does not moot a petitioner's ability to challenge the liability in Tax Court.**

A set-off of a disputed liability by offsetting a refund pursuant to §6402(a) is

the same as making a payment toward that liability, as explained in Discussion

Section III.A *supra*.  However, given the possibility of the Tax Court's

overpayment jurisdiction in CDP cases, paying off the underlying liability in

17

full does not moot the petitioner's ability to challenge that liability. *See* Discussion Section II.A, *supra.*

**B. The Tax Court must analyze if Ms. Zuch was correct about her outstanding liability for the 2010 tax year and her entitlement to credit for the $50,000 in prepayments for the 2010 tax year to ascertain mootness.**

As explained further in Discussion Section IV. C. *infra*, mootness as to §6330(c)(2)(B) in Ms. Zuch's Tax Court case hinges on whether the Tax Court has overpayment jurisdiction. To that end, the Tax Court must analyze whether Ms. Zuch's assertion that she should have been credited $50,000 towards her 2010 tax liability is correct. Alternatively, the Tax Court could evaluate the case through the verification requirements in §6330(c)(1). If the Tax Court did so it might find that the IRS had failed to comply with any number of requirements in rejecting the payments. However, for this finding to have any relevance in avoiding mootness in a situation like Ms. Zuch's, where the account balance for the year in question is $0, it would still be dependent on the Tax Court's ability to find an overpayment. *See* Discussion Section VI.B, *infra.*

**C. If the purported setoff does not moot the challenge, then further relief is available from the Tax Court.**

There are two areas of relief the Tax Court may grant Ms. Zuch if her challenge is not mooted by the offset of her 2018 income tax refund to satisfy her 2010 liability. *See* Jt. App. V1. A7. First, the Tax Court can decide the merits of

18

her claim as to whether her purported estimated tax payments should have been credited in full to her 2010 Amended Married Filing Separately return. According to Ms. Zuch, the IRS improperly credited those payments to her husband's separate 2010 tax account. *See* Jt. App. V2. A59. The husband then used them as payment in his own Offer in Compromise settlement with the IRS. *See Id.* There may be factual questions as to whether the IRS properly credited those payments. If the Tax Court finds that it did not, then Ms. Zuch would be entitled to a decision pursuant to its subject matter jurisdiction under §6330(c)(2)(B) that she had no underlying liability, or only partial liability, for the 2010 tax year. If the Tax Court does have overpayment jurisdiction, then this would not be mere symbolic relief. If the Tax Court were to find that she had less liability for taxable year 2010 than what she paid through refund offset, then it could find that there was an overpayment of tax. That finding would allow the court to order a refund.

Second, the Tax Court could evaluate whether the IRS' met its verification requirements in §6330(c)(1). If the IRS did not properly follow the rules of assessment and crediting, then the appeals officer in the case did not "obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met." §6330(c)(1). Section 6330(c)(3) authorizes a separate review of subsection (c)(1) determinations. *Hoyle v. Comm'r*, 131 T.C. 197, 201-202 (2008). The Tax Court therefore should have implicit

jurisdiction in such a case to determine an overpayment, even without the

continued possibility of a levy. See Discussion Section VI.B *infra*.

### D. A Tax Court ruling in Ms. Zuch's favor that did not order a refund would have preclusive effect in a suit brought by Ms. Zuch under 28 U.S.C. §1346(a)(1),

A Tax Court ruling that the IRS should have credited Ms. Zuch's 2010 account

with the $50,000 she claims to have paid but that did not also find an overpayment

and that a refund was due because of lack of overpayment jurisdiction would likely

operate as collateral estoppel on that crediting issue in a district court refund suit

brought under 28 U.S.C. §1346(a)(1).   Collateral estoppel, or issue preclusion,

arises in actions between different federal courts when an issue of law or fact has

been litigated and resolved in an action where the parties "had a full and fair

opportunity to litigate." *Taylor v. Sturgell,* 553 U.S. 880, 892 (2008).

If the Tax Court ruled in Ms. Zuch's favor based on a factual inquiry that the

estimated tax payments should have been applied to her but then stopped short of

finding it had overpayment jurisdiction and ordering a refund, then Ms. Zuch could

theoretically file her district court refund suit alleging that the issue of the

estimated tax payment is settled and leaving open the issue of overpayment and

refund that formed the basis of the suit. The district court could then find that,

since her estimated tax payments were improperly credited as determined by the

Tax Court, the offset of 2018 tax refund to the 2010 liability was an overpayment

and order a refund based on its jurisdiction in 28 U.S.C. §1346(a)(1) to order a refund for "any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws."

### E. Such a suit would be timely only if the "informal-claim doctrine" to the amount Ms. Zuch could recover applies.

If the Tax Court did not decide the issue of underlying liability in Ms. Zuch's case, then she would still face the hurdle of a timely claim for refund under §6511 if she wanted to initiate a refund claim and district court refund suit. Section 7422(a) bars a refund suit unless the taxpayer has first sought a "claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard." Meanwhile, §6511(a) requires a taxpayer to file a claim for refund within two years of when the tax was paid. According to the record in this case, Ms. Zuch paid her remaining 2010 liability on Apil 15, 2019 when the IRS offset her 2018 refund using §6402(a). Jt. App. V1. A7. Based strictly on the statutory time frame, she had to initiate refund procedures under §6511(a) and §7422(a) by April 15, 2021.

It may be possible, however, that Ms. Zuch's refund claim to the IRS might be timely if the informal claims doctrine applies, so long as it "fairly advis[ed] the Commissioner of the nature" of her claim for relief. *U.S. v. Kales*, 314 U.S. 186, 194 (1941). If Ms. Zuch's objection to the IRS' motion to dismiss in the Tax Court case below, filed on April 13, 2020 and in response to motion to dismiss the

IRS brought after offsetting her refund, can be construed as an informal claim for refund, then Ms. Zuch may be able to meet the time requirements. *See* Jt. App. V1. A6.

Recently, this Court decided in a non-precedential opinion, *Robinson v. Commissioner*, 2023 U.S. App. LEXIS 13522 (June 1, 2023), that a taxpayer's objection to a motion to dismiss a case as prematurely filed could function as an imperfect petition under §6330. In ruling that her objection should be treated as a petition, this court observed that Robinson's argument "summarized pertinent facts and raised claims related to the notice of determination and the action overall." Based on this model, it may well be that Ms. Zuch's objection might qualify as an informal claim for refund which she filed with the IRS as well as the Tax Court.

## V. QUESTION 5

If the Tax Court's decision dismissing Ms. Zuch's CDP case for lack of jurisdiction is allowed to stand, then neither *res judicata* nor collateral estoppel would bar her from obtaining refunds for her post-2010 payments in a federal district court if she could follow refund procedures and bring suit pursuant to 28 U.S.C. §1346(a)(1). The Tax Court has found that "a dismissal on the grounds of mootness would not have any res judicata or collateral estoppel effect." *Vigon*, 149 T.C. at 101. This aligns with the law on when the Tax Court dismisses a deficiency case for lack of jurisdiction. §7459(d) *See Hallmark Research*

22

*Collective v. Comm'r*, 159 T.C. No. 6 (2022) at slip op. p. 12 (Where a deficiency

case is dismissed for lack of jurisdiction, "there has been no adjudication of the

liability that could give rise to res judicata, [so] this dismissal also leaves the

taxpayer free to pay the tax and then pursue his refund remedies.")

## VI.   QUESTION 6

### A. The Tax Court's jurisdiction under 26 U.S.C. §6330 does not depend on the continued existence of a levy.

Because §§6330(c)(1) and (c)(2)(B) confer independent bases for subject

matter jurisdiction from collections actions in §6330(c)(2)(A)(ii), the Tax

Court's jurisdiction is not dependent on the continued existence of a levy.  *See*

Discussion Sections II.A.1., *supra* and VI.B. *infra*.

### B. Section 6330 independently confers such jurisdiction for (i) outstanding verification challenges under 26 U.S.C. § 6330(c)(1) or (ii) outstanding liability challenges under 26 U.S.C. §6330 (c)(2)(B).

Section 6330 does independently confer jurisdiction for both outstanding

verification challenges under §6330(c)(1) and outstanding liability challenges

under §6330(c)(2)(B).  Regarding the latter, please see Discussion Section II.A.1,

*supra*.

The verification requirement of §6330(c)(1) is a separate inquiry from the

determination of outstanding liability.   An IRS appeals officer must make their

determination both as to the verification requirements of §6330(c)(1) and as to the

23

issues raised under §6330(c)(2). *Hoyle* 131 T.C. at 201. Section 6330(c)(1) puts the onus on the appeals officer to investigate a case, reading "[t]he appeals officer *shall* at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met." [emphasis added]. The Tax Court, in turn, must therefore also review both separate parts of that determination pursuant to §6330(d). *Id*.

In *Hoyle*, the Tax Court distinguished §6330(c)(1) challenges further by finding that, because appeals officers are required to investigate whether all applicable laws and procedures are met, the Tax Court may review §6330(c)(1) verification challenges regardless of whether they were initially raised by the taxpayer in the prior administrative procedure. *Cf. Giamelli v. Commissioner*, 129 T.C. 107 (2007) (Petitioners can only litigate issues under §6330(c)(2) in CDP cases if they were first raised in the appeals hearing). In *Hoyle,* the court recognized that that §6330(c)(1) challenges should be treated differently. As the court explained, "[u]nlike section 6330(c)(2) issues, which will be a part of the determination we are reviewing only if the issues were raised by the taxpayer at the Appeals hearing, the section 6330(c)(1) verification is required to be a part of every determination." ). *Hoyle* 131 T.C. at 202. The court decided therefore that it could "review the Appeals officer's verification under section 6330(c)(1) without regard to whether the taxpayer raised it at the Appeals hearing." *Id.* at 202-3.

24

**C. A "Notice of Determination" under 26 U.S.C. § 6330(c)(3) enables the Tax Court to opine on §6330(c)(1) verification requirements as well as §6330(c)(2) issues as well as the propriety of a levy.**

As reviewed in Discussion Sections II.A and VI.B, *supra*, underlying liability in §6330(c)(2)(B) and the verification requirement of §6330(c)(1) form independent bases of jurisdiction over which the Tax Cout may make its determination.  This is also true of "spousal defenses" in §6330(c)(2)(A)(i) referred to in Discussion Section II.B, *supra*.

## VII.   QUESTION 7

The Supreme Court in *Polselli v. I.R.S.*, 598 U.S. _, 142 S. Ct. 1231 (2023) has affirmed that the IRS has broad powers to collect assessed taxes.  However, it also demonstrates that that power is not absolute and that there is indeed a difference between situations that enable collections and those that determine the amount of tax due.

The issue in *Polselli* was whether the IRS' authority to issue a summons in the aid of collection of tax pursuant to §7609(c)(2)(D)(i) is subject to the notice requirement in §7609(a)(1) when the delinquent taxpayer has no legal interest in the records being sought.  If there was such a requirement, then the petitioner in the case would have standing for a motion to quash.  The Court, however, determined

that a plain reading of the statute showed no "legal interest test" limitation on §7609(c)(2)(D)(i).

The Court also focused on the difference between situations where the IRS is issuing a summons to gather information about a taxpayer to assess a liability and those in which a liability has already been assessed. The need to balance effective tax collection with taxpayer rights means that more protections are in place when liability is at issue.  That is why, as Justice Jackson writes in concurrence, "while the need for efficient tax administration is certainly important and Congress has given the agency lots of attendant authority, the *default* rule when the IRS seeks information from a third party recordkeepers under this statute is notice." *Id.* at 1241 (J. Jackson, concurring).

Read in light of the *Polselli* opinion, §6330(c)(2)(B) should be recognized as falling into the category of situations where tax liability is being investigated and thus taxpayer rights should be construed broadly.  Even though, by the nature of the CDP process, the opportunity to raise liability in Tax Court arises after assessment, the purpose of CDP cases brought under §6330(c)(2)(B) is to challenge and redetermine that liability. As such, it should be viewed in the light most favorable to the taxpayer and as something that restrains the IRS' broad power to collect taxes.

Respectfully Submitted,

/s/*Audrey Patten*
Audrey Patten
*Counsel for Amicus*
The Tax Litigation Clinic,
The Legal Services Center
of Harvard Law School
122 Boylston St.
Jamaica Plain, MA 0230
(617)390-2550
apatten@law.harvard.edu


Dated: July 12, 2023

**CERTIFICATE OF SERVICE**

This is to certify that one copy each of the brief for amicus was served on appellant, through her counsel Frank Agostino, and on appellee, through its counsel Jennifer Rubin and Julie Ciamporcero Avetta, on July 12, 2023, by filing it with the CM/ECF system of which they are all members.

In addition, one paper copy each of the brief for amicus was served by mailing the same United States Priority Mail to appellant's counsel at Agostino & Associates, P.C., 14 Washington Place Hackensack, NJ 07601 and to appellee's counsel at Tax Division, Department of Justice, Post Office Box 502, Washington, CD.C. 20044.

Dated: July 12, 2023                    Respectfully Submitted,


_____/s/ *Audrey Patten*_____

Audrey Patten
*Counsel for Amicus*

## CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that I am a member of the bar of the United States Court of

Appeals for the Third Circuit.


Dated: July 12,  2023                    Respectfully Submitted,


_____/s/ *Audrey Patten*_____

Audrey Patten
*Counsel for Amicus*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1. This brief complies with the type-volume limitations of the Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because this brief contains 6,469 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Dated: July 12, 2023                    Respectfully Submitted,


_____/s/ *Audrey Patten*_____

Audrey Patten
*Counsel for Amicus*

# CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS

Pursuant to Third Circuit Local Appellate Rule 31.1.(c), I hereby certify that the

text of the electronic brief is identical to the text in the paper copies.

Dated: July 12, 2023                    Respectfully Submitted,


_____/s/ *Audrey Patten*_____

Audrey Patten
*Counsel for Amicus*

## CERTIFICATE OF VIRUS CHECK

Pursuant to Third Circuit Local Appellate Rule 31.1.(c), I hereby certify that a

virus detection program was run on the electronic version of this brief using

Crowdstrike Falcon Sensor and that no virus was detected.

Dated: July 12, 2023                      Respectfully Submitted,


_____/s/ *Audrey Patten*_____

Audrey Patten
*Counsel for Amicus*