**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2244
_____

JENNIFER ZUCH,

Appellant

v.

COMMISSIONER OF INTERNAL REVENUE
_____

On Appeal from the United States Tax Court
(IRS 1:14-25125)
Tax Court Judge:  Honorable Lewis R. Carluzzo
_____

Argued
April 26, 2023

Before:   JORDAN, KRAUSE, and BIBAS*, *Circuit Judges*

(Filed: March 22, 2024)
_____

Frank Agostino
Agostino & Associates
14 Washington Place
Hackensack, NJ  07601

Jeffrey M. Dirmann    **[ARGUED]**
4th Floor, Suite 17
55 Madison Avenue
Morristown, NJ  07960
  *Counsel for Appellant*

Julie C. Avetta   **[ARGUED]**
Jennifer M. Rubin
United States Department of Justice
 Tax Division
950 Pennsylvania Avenue NW
P.O. Box 502
Washington, DC  20044
  *Counsel for Appellee*

Audrey Patten
Legal Services Center of Harvard Law School
122 Boylston Street
Jamaica Plain, MA  02130
  *Court-Appointed Amicus Curiae*[*]

————————————

————————————

  [*] We requested briefing on certain issues from Audrey Patten, Esquire, of the Harvard Law Tax Litigation Clinic, whom we appointed as Amicus Curiae.  We are grateful for the thoughtful insights provided by Ms. Patten and the Clinic.

OPINION OF THE COURT[1]

_____

**JORDAN**, *Circuit Judge*.

When Congress grants taxpayers the right to challenge what the Internal Revenue Service says is owed to the government, Congress's will prevails. The IRS cannot say that such a right exists only under the circumstances it prescribes. That ought to go without saying, but this case requires us to say it.

The IRS sent Jennifer Zuch a notice informing her that it intended to levy on her property to collect unpaid tax. She challenged the levy, arguing that she had prepaid the tax. The IRS Independent Office of Appeals (the "IRS Office of Appeals") sustained the levy, and Zuch petitioned the United States Tax Court for review of that decision. While the issue was being litigated in that Court over several years, the IRS withheld tax refunds owed to Zuch and applied them to what it said was her unpaid balance, satisfying it in full. When, according to the IRS's accounting, there was no more tax to be paid, the IRS filed a motion to dismiss the Tax Court proceeding for mootness, and the Court granted the motion.

Because Zuch's claim is not moot, we will vacate the dismissal and remand this matter to the Tax Court to determine whether Zuch's petition is meritorious.

_____

[1] Judge Bibas joins the opinion in full except for Section II.C.3.

## I.    BACKGROUND

### A.    Overview of Tax Court Proceedings

Some understanding of tax procedure is essential to the consideration of this case, so we begin with a brief summary of the two basic pathways by which taxpayers can dispute what they owe the government before the IRS collects: deficiency proceedings and collection due process hearings.[2]    After addressing a key question related to these pathways – the distinction between unpaid tax and tax liability – we turn to the factual and procedural background that led to this appeal.

#### 1.    Deficiency Proceedings

When the IRS decides that a taxpayer owes more than the amount reported on her tax return, it mails the taxpayer a

---

[2] If a taxpayer wishes to dispute what he owes *after* the IRS collects, he must file a refund action in a federal district court or the Court of Federal Claims.  26 U.S.C. § 7422.

"notice of … deficiency."[3]  26 U.S.C. § 6212(a).[4]  The taxpayer may challenge the IRS's tax determination before collection by filing a petition in the Tax Court within ninety days after the mailing of the notice of deficiency.  § 6213(a).  Such a petition commences a "deficiency proceeding[]."  *Cooper v. Comm'r*, 718 F.3d 216, 223 (3d Cir. 2013).  Deficiency proceedings are "[t]he Tax Court's principal basis for jurisdiction[.]"  *Sunoco Inc. v. Comm'r*, 663 F.3d 181, 187 (3d Cir. 2011).  In a deficiency proceeding, the Tax Court has jurisdiction to determine the correct amount of tax owed, § 6214(a), and to order that any overpayments be refunded to a taxpayer, § 6512(b)(1).  The Tax Court's final order in a deficiency proceeding is subject to review by an Article III court.  § 7482(a)(1).

## 2.    Collection Due Process Proceedings

If a taxpayer does not pay the amount the IRS says is due, the IRS can levy – that is, seize and sell – a taxpayer's property to satisfy the tax liability.  § 6331(a).  But, before it does so, it must provide the taxpayer notice and an opportunity

---

[3] A notice of deficiency is a "jurisdictional prerequisite" to litigate the merits of the IRS's deficiency determination in the Tax Court.  *Laing v. United States*, 423 U.S. 161, 165 n.4 (1976).  We have called the notice of deficiency the taxpayer's "ticket to the Tax Court[.]"  *Robinson v. United States*, 920 F.2d 1157, 1158 (3d Cir. 1990) (internal quotation marks omitted).

[4] Unless otherwise indicated, all section references in the remainder of this opinion are to the Internal Revenue Code of 1986, as amended, 26 U.S.C. § 1 *et seq.*

for a hearing to contest the levy. § 6330(a)(1). After the IRS sends notice to the taxpayer of its intent to levy, the taxpayer has thirty days to request a hearing. § 6330(a)(3)(B). That hearing, known as a Collection Due Process ("CDP") hearing, is "an administrative proceeding before an appeals officer with the [IRS Office of Appeals] in which a taxpayer may raise 'any relevant issue relating to the unpaid tax or the proposed levy.'" *United States v. Weiss*, 52 F.4th 546, 548 (3d Cir. 2022) (quoting § 6330(c)(2)(A)). Under § 6330(c)(2)(B), the taxpayer

> may also raise at the [CDP] hearing challenges to the existence or amount of [his or her] underlying tax liability for any tax period if [he or she] did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

This scheme makes good sense in light of potential due process concerns. "[S]ome form of hearing is required before an individual is finally deprived of a property interest[,]" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), and a taxpayer who cannot challenge a levy before seizure and sale may wrongfully lose property without notice or the opportunity to be heard, *see* § 6330(c)(2)(A). Similarly, and particularly relevant here, a taxpayer who cannot challenge her underlying liability before collection may wrongfully lose money without notice or a hearing. § 6330(c)(2)(B); *see generally* S. Rep. No. 105-174, at 67 (1998) ("[T]he IRS should afford taxpayers adequate notice of collection activity and a meaningful hearing before the IRS deprives them of their property.").

So, to recap: If the taxpayer could have commenced a deficiency proceeding before the CDP hearing, the hearing provides a forum to challenge the unpaid tax and proposed levy only.  But if the taxpayer had no opportunity to commence a deficiency proceeding, the CDP hearing provides a forum to challenge the unpaid tax, the proposed levy, and the underlying tax liability.

Once the IRS Office of Appeals makes a determination on the taxpayer's challenges, the taxpayer has thirty days to petition the Tax Court to review any issues that were properly raised at the CDP hearing.  § 6330(d)(1).  Again, the Tax Court's final order is subject to review by an Article III court.  § 7482(a)(1).

### 3.    Unpaid Tax Versus Tax Liability

Section 6330(c)(2)(B) of the Internal Revenue Code raises an important question: What is the difference between unpaid tax and tax liability?  There must be some distinction, or else the language in § 6330(c)(2)(B) allowing a challenge to liability would be superfluous.[5]  Congress confined the right to raise a liability challenge to taxpayers who did not have a previous opportunity to do so, while at the same time granting all taxpayers in a CDP hearing the ability to raise issues relating to the unpaid tax or proposed levy.  Hence, it is evident

---

[5] Section 6330(c)(2)(A) authorizes a taxpayer to raise "any relevant issue relating to the unpaid tax or the proposed levy," while § 6330(c)(2)(B) grants qualifying taxpayers an opportunity to raise "challenges to the existence or amount of the underlying tax liability."

that Congress intended to grant to qualifying taxpayers some right in addition to the rights given to all taxpayers in a CDP hearing. *See infra* section II.C.3. On that basis, "unpaid tax" cannot be synonymous with "tax liability." *See also United States v. Yung*, 37 F.4th 70, 79 (3d Cir. 2022) ("Normally, where Congress uses different words, we read those words to have different meanings.").

There is indeed a distinction: West's Tax Law Dictionary defines "tax liability" as the "[t]otal amount of tax owed to the I.R.S. *after* the allowance of any proper credits." *Tax Liability*, *West's Tax Law Dictionary* § T830 (emphasis added). And it defines credit as "an allowance against the tax itself [including] [i]ncome tax withheld on wages, *prepaid estimated taxes*, [etc.]" *Credit*, *West's Tax Law Dictionary* § C4530 (emphasis added). Tax liability is therefore the net amount owed to the IRS: If you owe $20 to the IRS and have prepaid that $20, your tax liability – at least on these simple facts – is $0. Understanding "tax liability" in this way accords with the plain meaning of "liability." To say, "I have no liability" is to say, in effect, "I owe nothing." A "challenge" to liability under § 6330(c)(2)(B) means the taxpayer disputes what the IRS says he owes.

In contrast, "issue[s] relating to the unpaid tax" under § 6330(c)(2)(A) do not directly concern the amount and existence of the liability. Instead, such issues concern the IRS's proposed collection activity, as illustrated by the three examples Congress provides in the statute: "(i) appropriate spousal defenses [for a spouse who filed a joint tax return]; (ii) challenges to the appropriateness of collection actions; and (iii) offers of collection alternatives." § 6330(c)(2)(A). In each case, the focus is not on the liability itself, but is rather on the

method the IRS will use to collect what it says is due to the government. *See* Treas. Reg. § 301.6330-1(e)(3), Q&A (E)(3) (2006) ("When a taxpayer asserts a spousal defense, the taxpayer is not disputing the amount or existence of the liability itself[.]").

Strictly speaking, then, unpaid tax means something different than tax liability. For example, assuming that the IRS has assessed $20 in taxes, your unpaid tax is just that: the $20 the IRS says you owe. But further proceedings can change that number. If a deficiency proceeding or a challenge under § 6330(c)(2)(B) in a CDP hearing establishes that the IRS should have credited $5 toward the $20 balance, your liability is $15, and, once fixed by those further proceedings, that sum also becomes your unpaid tax.

**B.    Factual Background**[6]

Zuch and Patrick Gennardo[7] were married from 1993 to 2014. On September 12, 2012, they filed separate, untimely tax returns for the 2010 tax year, each electing married-filing-separately status.[8] Zuch's tax return showed adjusted gross

---

[6] Unless otherwise noted, the facts are undisputed. They are taken primarily from the stipulated factual record submitted to the Tax Court.

[7] Gennardo is not a party in this proceeding.

[8] A taxpayer must elect one of several filing statuses when submitting an individual income tax return. *See* IRS, *1040 (and 1040-SR): Instructions* 13 (2023), https://www.irs.gov/pub/irs-pdf/i1040gi.pdf

income of $74,493 and an overpayment of tax of $731.[9] Gennardo's tax return showed adjusted gross income of $1,077,213 and tax due of $385,393. On that same day, Gennardo filed an offer-in-compromise to settle his tax debts for the 2007 to 2011 tax years.[10]

All of this had been preceded in 2010 and 2011 by two prepayments of the couple's estimated tax liability for 2010. More specifically, in June of 2010, the couple submitted an estimated tax payment of $20,000 to the IRS for the 2010 tax year.[11] Gennardo then, in January of 2011, sent an estimated

---

[https://perma.cc/X76A-GVKC]. Unmarried taxpayers who do not have a qualifying dependent must elect "Single" status. *Id.* Unmarried taxpayers who have a qualifying dependent may elect "Head of Household" status. *Id.* at 14-15. Married taxpayers have the option to elect either "Married Filing Jointly" or "Married Filing Separately" status. *Id.* at 13-14. Unmarried persons whose spouse died during the previous two tax years and who have a qualifying dependent may elect "Qualifying Surviving Spouse" status. *Id.* at 15.

[9] The IRS applied that overpayment to the couple's 2008 unpaid tax liability.

[10] An offer-in-compromise allows a taxpayer to settle tax debts for less than the total amount of the outstanding liability. § 7122(a).

[11] The check was drawn from a bank account that listed both Zuch's and Gennardo's names. The accompanying Form 1040-ES also listed both of their names.

10

tax payment of $30,000 for the 2010 tax year.[12]  When they made the payments, Zuch and Gennardo did not specify how they wanted to have the IRS allocate those payments to their respective tax liabilities, and Zuch's late-filed 2010 tax return did not mention the estimated payments.  After processing Gennardo's return, the IRS sent him a notice, in October of 2012, that showed it had applied the full $50,000 in estimated payments to offset the tax due on his individual 2010 return.

Later, in November of 2012, Zuch filed an amended 2010 tax return to report additional income of $71,000 from a retirement account distribution, causing additional tax due of $27,682.  On that return, she claimed the benefit of the same $50,000 in estimated payments and requested a refund of $21,918.  The IRS assessed Zuch the additional tax she reported, but it did not refund or otherwise credit her for the $50,000 in estimated payments that she claimed.  It also allegedly sent her a notice and demand for payment of her additional tax due, but she disputes ever having been sent such a notice.[13]

---

[12] The check Gennardo used to make the payment listed only his name.  The cover letter accompanying the check, however, listed both Zuch's and Gennardo's names.

[13] Before the Tax Court, the IRS and Zuch jointly stipulated that the IRS had sent her a notice of tax due and demand for payment.  In her briefing, Zuch now asserts that the IRS never notified her.  A notice of tax due and demand for payment is not to be confused with a notice of deficiency; the IRS uses the former to notify the taxpayer of an unpaid tax and to demand payment, *Notice CP14*, Taxpayer Advoc. Serv.

Soon after, in March of 2013, Gennardo filed an amended tax return for the 2010 tax year. He included a statement that he was amending his return in part to notify the IRS that there were estimated payments of $50,000 that should be allocated to Zuch,[14] apparently showing his approval of Zuch's previously filed amended return in which she claimed the benefit of the estimated payments.[15] But the IRS did not adjust the allocation of the $50,000 from Gennardo to Zuch. In June of 2013, Gennardo submitted an amended offer-in-compromise to increase the amount of his offer, which the IRS accepted the next month. Despite his earlier direction that the estimated payments should be allocated to Zuch, the IRS gave him a document showing it had credited the $50,000 in estimated payments to his outstanding tax liability.

_____

(updated July 11, 2023), https://www.taxpayeradvocate.irs.gov/notices/notice-cp14/ [https://perma.cc/H92Z-M9QM], while the IRS uses the latter to notify a taxpayer that it is proposing to increase the total amount of tax due for a particular tax year, *90 Day Notice of Deficiency*, Taxpayer Advoc. Serv. (updated Dec. 6, 2023), https://www.taxpayeradvocate.irs.gov/notices/exam-90-day-notice-of-deficiency/ [https://perma.cc/VZX2-84JZ]. It is undisputed that Zuch never received a notice of deficiency.

[14] Gennardo did not mention on his tax return that the IRS had already allocated the $50,000 in estimated payments to him or that he had an offer-in-compromise pending.

[15] Zuch's and Gennardo's amended tax returns were prepared by the same tax preparer.

### C.    Procedural Background

### 1.    Zuch's CDP Hearing

On August 31, 2013, the IRS sent Zuch a "Final Notice of Intent to Levy and Notice of your Right to a Hearing." (App. at 563.)  That notice informed her that the IRS intended to levy on her property for failing to pay her remaining 2010 tax liability of approximately $36,000 and that she had thirty days to appeal the levy by requesting a CDP hearing with the IRS Office of Appeals.  Zuch timely requested a CDP hearing, and because she did not receive a notice of deficiency or "otherwise have an opportunity to dispute [her] tax liability," she exercised her right to challenge "the existence or amount of the underlying tax liability" in the CDP proceedings. § 6330(c)(2)(B).  Specifically, Zuch alleged that the $50,000 of estimated tax payments credited to Gennardo should have been credited to her, making her underlying tax liability $0.[16] Prior to the hearing, Zuch's counsel submitted a signed declaration from Gennardo directing the IRS to apply the $50,000 to Zuch's personal tax liability.[17]

---

[16] Zuch also requested that the IRS abate any underpayment penalties against her because she was going through a divorce with Gennardo and collection would create an undue hardship for her.  The IRS denied that request.

[17] The IRS notes in its briefing that the declaration was signed in March 2014, nearly eight months after Gennardo had received credit for the estimated payments pursuant to his amended offer-in-compromise.

The CDP hearing was held via telephone on July 29, 2014.  During the hearing, an IRS officer told Zuch's counsel that he did not believe that the IRS could credit any of the estimated payments to Zuch's liability because they had already been credited to Gennardo's account, which had been subject to an offer-in-compromise.  On September 25, 2014, the IRS Office of Appeals sent Zuch a Notice of Determination sustaining the IRS's proposed levy and stating it was "not in a position" to move credits from Gennardo's account to hers. (App. at 294.)  That notice also informed Zuch that she had thirty days to dispute the IRS's determination by filing a petition with the Tax Court.

## 2.    Zuch's Tax Court Proceedings

Zuch did petition the Tax Court for relief.  She asked the Court to conduct a de novo review of her underlying tax liability and conclude that the $50,000 in estimated tax payments should be applied to her individual account.  The IRS moved for summary judgment, which the Tax Court denied in December 2016.  It made three observations at that time.  First, it stated that the initial $20,000 estimated payment appeared to be a joint estimated tax payment and that it was unclear why the IRS had applied the payment to Mr. Gennardo's tax liabilities.  Second, the Court explained that it was "unclear whether the [later] $30,000 payment was a separate payment or a joint payment."  (App. at 264.)  And third, it noted that the "circumstances surrounding Mr. Gennardo's [offer-in-compromise were] not clear[,]" including whether that offer-in-compromise satisfied Zuch and Gennardo's joint tax liabilities for any years they filed a joint tax return and, if so, whether Zuch was involved in the offer-in-compromise process.  (App. at 264.)

The Tax Court then granted the IRS's unopposed motion to remand the case to the IRS Office of Appeals. In June 2017, the IRS issued a Supplemental Notice of Determination, confirming its prior determination to sustain the levy and stating that it received no new information that would compel it to change its prior decision. The case returned to the Tax Court and was initially set for trial. Instead, the parties agreed to forgo trial and proceed on a stipulated factual record.[18]

### 3.    Credit Setoffs

Throughout the several years Zuch was arguing with the IRS about her 2010 tax liability, including in the CDP hearing and in the Tax Court, the IRS was taking tax refunds that Zuch was owed in later tax years and applying them to what it calculated to be her 2010 tax liability. It did this six times – once each in 2013, 2014, 2015, and 2019, and twice in 2016.[19] On April 15, 2019, the IRS used a refund to set off the remainder of Zuch's 2010 unpaid tax, reducing the balance due to $0.

---

[18] Tax Court Rule 122(a) provides, "Any case not requiring a trial for the submission of evidence (as, for example, where sufficient facts have been admitted [or] stipulated …) may be submitted … by motion of the parties filed with the Court."

[19] In its briefing and at oral argument, the IRS alleged that Zuch should have received notice of the setoffs. But it provided no evidentiary support that notice was sent to her.

With no remaining unpaid tax on which to execute a levy, the IRS moved to dismiss the Tax Court proceeding as moot. Zuch opposed the motion, but the Tax Court granted it and dismissed the petition. In a short order, the Court held that the case was moot. Without acknowledging § 6330(c)(2)'s distinction between unpaid tax and underlying tax liability, the Court found there was no longer a live controversy because there was "no unpaid liability … upon which a levy could be based" and the IRS was "no longer pursuing the proposed collection action[.]" (App. at 7-8.) It also explained that the Tax Court was not the proper forum to determine whether Zuch had overpaid because it lacked "jurisdiction to determine an overpayment or to order a refund or credit of tax paid in a [CDP] proceeding[.]" (App. at 7.)

Zuch timely appealed the Tax Court's order.

## II. DISCUSSION[20]

The dispute comes down to this: whether, in the midst of litigation over a contested tax liability, the IRS is free to deprive the Tax Court of jurisdiction by the expedient of taking the taxpayer's tax refunds and applying them to that liability. The answer is no. The IRS's arrogation to itself of the power to eliminate pre-deprivation judicial review of liability by seizing a taxpayer's money to cover a disputed debt is not

---

[20] The Tax Court had jurisdiction under §§ 6330(d)(1) and 7442. We have jurisdiction pursuant to § 7482(a)(1). We exercise "de novo review over the Tax Court's findings of law, including its construction and application of the Internal Revenue Code." *DeNaples v. Comm'r*, 674 F.3d 172, 176 (3d Cir. 2012). We review factual findings for clear error. *Id.*

supported by relevant statute, common law (incorporated into statute), or mootness principles.

### A. The Tax Court Originally Had Jurisdiction to Hear Zuch's Claim.

The Tax Court is a tribunal of limited jurisdiction. *Sunoco*, 663 F.3d at 187.  Being organized under Article I of the Constitution, it possesses only the power "expressly conferred by Congress."  *Id.*  Congress has granted the Tax Court jurisdiction to review decisions made by the IRS Office of Appeals in CDP hearings.  § 6330(d)(1).  Specifically, the Tax Court is to consider "any relevant issue [raised by the taxpayer] relating to the unpaid tax or the proposed levy[.]" § 6330(c)(2)(A).  If the taxpayer "did not receive any statutory notice of deficiency for [his or her] tax liability or did not otherwise have an opportunity to dispute such tax liability[,]" the Court must, in addition, consider any challenge "to the existence or amount of the underlying tax liability[.]" § 6330(c)(2)(B).

Zuch fell into the latter category, disputing her 2010 tax liability at the CDP hearing by arguing that the $50,000 provided by her and Gennaro as estimated tax payments should have been applied to satisfy her tax liability instead of Gennaro's.  Because Zuch had neither received a notice of deficiency nor had an opportunity to contest the allocation of the tax payments prior to her CDP hearing,[21] the IRS was

---

[21] Zuch did not receive a notice of deficiency because the amount of tax due that she reported, without taking any payments into account, is not in dispute.  *See supra* note 13.

required to consider her challenge.  The IRS did so, finding that the $50,000 could not be credited to Zuch and sustaining the levy.  Accordingly, the Tax Court had jurisdiction to review that determination, including whether the estimated payments were allocated correctly.[22]

### B.     The Tax Court Applies Article III Case or Controversy Principles to Determine Mootness.

"Article III of the Constitution restricts the power of federal courts to 'Cases' and 'Controversies.'"  *Chafin v. Chafin*, 568 U.S. 165, 171 (2013).  As an Article I tribunal, however, the Tax Court "is not fully constrained by Article III's case or controversy limitation." *Baranowicz v. Comm'r*, 432 F.3d 972, 975 (9th Cir. 2005).  Nevertheless, the Tax Court wisely applies that constraint to itself, *Battat v. Comm'r*, 148 T.C. 32, 46 (2017) ("The case or controversy requirement under Article III presumptively applies in the Tax Court."), and, of course, is free to do so for prudential reasons, *cf. Zevalkink v. Brown*, 102 F.3d 1236, 1243 (Fed. Cir. 1996) ("As a court established under Article I of the U.S. Constitution, the Court of Veterans Appeals … has decided, based on the same prudential considerations behind the 'case or controversy' requirement, … that it would refrain from deciding cases that

---

[22] The IRS does not dispute that the Tax Court originally had jurisdiction to review the proper allocation of the estimated tax payments. (Supp. Br. at 15 ("If Zuch's tax liability for 2010 had not been fully satisfied by the credit offsets, we agree that the case would not be moot and that the Tax Court could review the proper allocation of the estimated tax payments.").)

do not present an actual case or controversy."). Zuch and the IRS agree that the Tax Court need not hear a moot case. Accordingly, for purposes of this matter, we discuss and apply Article III mootness principles to determine whether Zuch's claim is moot.

Article III permits federal courts to "entertain actions only if [those actions] present live disputes, ones in which both sides have a personal stake." *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 305 (3d Cir. 2020). That "case or controversy" requirement remains "through all stages of federal judicial proceedings, trial and appellate." *Chafin*, 568 U.S. at 172 (internal quotation marks omitted). Thus, a case becomes moot, and a federal court is deprived of jurisdiction to hear that case, when there is no longer a live case or controversy between the litigants. *Id.* "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* (internal quotation marks omitted). Therefore, a case "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (cleaned up). A defendant faces a "heavy burden" when trying to persuade a court that there is no longer a live controversy. *Hartnett*, 963 F.3d at 305-06 (internal quotation marks omitted).

## C.    Zuch's Claim Is Not Moot.

The parties dispute whether Zuch's claim falls under § 6330(c)(2)(A) or § 6330(c)(2)(B). We therefore first address how Zuch's claim should be characterized, before turning to the question of mootness.

### 1.    The Characterization of Zuch's Claim.

In the Notice of Determination that Zuch received, the IRS listed her challenge to the allocation of the estimated payments under the heading "Challenges to the Liability." (App. at 298.)  Now, however, it argues that a challenge to the allocation of estimated tax payments is not a challenge to the "underlying liability," which involves § 6330(c)(2)(B), but is rather a challenge "relating to the unpaid tax" under § 6330(c)(2)(A).[23]  *See supra* section I.A.3.  It says that Zuch's claim should be understood not as involving the net amount she owes to the IRS, but rather the amount of tax she self-reported on her amended return, separate from any payments she reported or paid to satisfy that tax.  Thus, the IRS asserts that once there is no levy and no unpaid tax, the challenge to the proper allocation of the payments is extinguished because Zuch's underlying tax liability, as the IRS defines it, is not disputed.

This is, to be frank, nothing but self-serving word play. The IRS says an "underlying tax liability" must be understood by looking only at the "total tax" line on a return, while turning a blind eye to estimated tax payments listed on the very same return.  But Zuch's "tax liability" did not exist in a vacuum,

---

[23] *See also* I.R.S. Notice CC-2014-002 (May 5, 2014), 2014 WL 2003048 (explaining the IRS's view that a challenge to whether the IRS properly applied a payment is a challenge to the unpaid tax under § 6330(c)(2)(A), subject to abuse-of-discretion review, rather than a challenge to the underlying tax liability under § 6330(c)(2)(B), subject to de novo review).

separate from payments she made on that liability.[24]  She would only have an underlying liability if the tax was unpaid after she filed her amended return.

Perhaps because its meaning is clear, the term "underlying tax liability" is not defined by statute, nor is there any reference to its meaning in the relevant legislative history. *Montgomery v. Comm'r*, 122 T.C. 1, 7 (2004).  Yet, the Tax

---

[24] Even the *Greene-Thapedi* court, *see infra* section II.C.3, acknowledged that the Tax Court may need to consider tax payments in reviewing a challenge to the underlying tax liability:

> We do not mean to suggest that this Court is foreclosed from considering whether the taxpayer has paid more than was owed, where such a determination is necessary for a correct and complete determination of whether the proposed collection action should proceed. Conceivably, there could be a collection action review proceeding where … the proposed collection action is not moot and where pursuant to sec. 6330(c)(2)(B), the taxpayer is entitled to challenge "the existence or amount of the underlying tax liability."  In such a case, the validity of the proposed collection action might depend upon whether the taxpayer has any unpaid balance, which might implicate the question of whether the taxpayer has paid more than was owed.

*Greene-Thapedi v. Comm'r*, 126 T.C. 1, 11 n.19 (2006).

Court has been inconsistent in treating challenges to the IRS's application of payments and credits toward tax as, in some instances, falling under § 6330(c)(2)(A), and in others as under § 6330(c)(2)(B). *Compare Landry v. Comm'r*, 116 T.C. 60, 62 (2001) ("[T]he validity of the underlying tax liability, i.e., the amount unpaid *after application of credits* to which petitioner is entitled, is properly at issue[.]" (emphasis added)), *Boyd v. Comm'r*, 117 T.C. 127, 131 (2001) (same), *and Dysle v. Comm'r*, T.C.M. (RIA) 2004-285, at 3 (same), *with Melasky v. Comm'r*, 151 T.C. 89, 92 (2018) ("A question about whether the IRS properly credited a payment is not a challenge to a tax liability; i.e., the amount of tax imposed by the Code for a particular year.  It is instead a question of whether the liability remains unpaid." (emphases omitted)).

The inconsistency is puzzling since it seems obvious that a taxpayer's "challenge[] to the existence or amount of the underlying tax liability" involves whether and how much the taxpayer has paid on that liability.  § 6330(c)(2)(B).  A dispute over whether the IRS appropriately credited a taxpayer's account with estimated tax payments is, at bottom, a dispute over the taxpayer's underlying tax liability.  The point is one of plain English.  Therefore, Zuch's argument that her estimated tax payments were erroneously allocated to her ex-husband is a challenge to her underlying tax liability under § 6330(c)(2)(B).

Nonetheless, even if the IRS is correct that Zuch's claim is properly characterized as a challenge to unpaid tax under § 6330(c)(2)(A), the IRS still loses.

**2.    Zuch's Claim Is Not Moot Because the IRS's Setoffs Were Invalid.**

Because, as explained below, the Tax Court retains jurisdiction to review setoffs, and the IRS cannot satisfy a tax dispute by means of unlawful credit setoffs, Zuch's tax obligation was not properly set off, and she can challenge the IRS's application of the estimated payments.[25]

*a)      The Tax Court has jurisdiction to review setoffs.*

Under § 6402(a) of the Internal Revenue Code, the IRS normally must refund to taxpayers any tax payments in excess of their liability for that taxable year.  But § 6402(a) allows the IRS to apply any refund amount as a setoff against a taxpayer's unpaid tax debts, thus lowering or eliminating the amount of the refund.

The IRS contends that, in § 6512(b)(4), Congress affirmatively stripped the Tax Court of its jurisdiction to review setoffs.  That provision says the "Tax Court shall have no jurisdiction *under this subsection* to restrain or review any credit or reduction made by the Secretary under section 6402." § 6512(b)(4) (emphasis added).  But, by its terms, subsection 6512(b) is limited to describing the Tax Court's overpayment and refund jurisdiction in a deficiency proceeding.  *See supra* Section I.A.1.  It does not refer to CDP proceedings, so that

---

[25] As noted previously, the IRS does not dispute that the Tax Court had jurisdiction to hear Zuch's claim regarding the estimated tax payments at issue prior to the IRS's credit setoffs, *see supra* note 22, albeit under § 6330(c)(2)(A).

23

jurisdiction stripping provision is plainly inapplicable. It does not affect Zuch's case.[26]

The IRS also asserts that Congress did not affirmatively grant the Tax Court the power to review setoffs in a CDP case. It may be that Congress has not *explicitly* granted the Tax Court such power, but an *implicit* grant allows the Court to review setoffs in any event.

As the Tax Court has recognized, "[s]ection 6402(a) contains a statutory counterpart" to the common law right of offset. *Boyd v. Comm'r*, 124 T.C. 296, 300 (2005). And the common law of setoffs "calls for judicial review of the merits of the claim being invoked as an offset of a government debt." *Agility Pub. Warehousing Co. K.S.C.P. v. United States*, 969 F.3d 1355, 1365 (Fed. Cir. 2020). For example, the Federal Circuit has "emphasized that the Debt Collection Act [of 1982, Pub. L. No. 97-365, 96 Stat. 1749,[27]] was intended to

---

[26] In its opening brief and at oral argument, the IRS argued that § 6402(g) also barred judicial review of tax setoffs under § 6402 "in the Tax Court or anywhere else." (Answering Br. at 22; Oral Arg. Trans. at 85-87.) It retreated from that position in its supplemental briefing.

[27] Akin to § 6402(a), the Debt Collection Act provides, in relevant part, that the government may collect an outstanding debt owed to the United States "by [means of] administrative offset," 31 U.S.C. § 3716(a), which means to "withhold[] funds payable by the United States … to … a person to satisfy" a debt that the person owes the government, *id.* § 3701(a)(1).

supplement, and not displace, the government's pre-existing offset rights under the common law." *McCall Stock Farms, Inc. v. United States*, 14 F.3d 1562, 1566 (Fed. Cir. 1993). "Congress understood that to trigger the [Debt Collection Act's] offset provision, a pre-existing, valid debt must first be owed to the United States." *Agility*, 969 F.3d at 1364. Accordingly, the court reasoned that the Act "cannot be reasonably interpreted as shielding from judicial review the United States' determination that a pre-[existing] debt is owed." *Id.*

Because § 6402 carries forward the common law of setoffs, and because that section says nothing about disallowing Tax Court offset review (as Congress has expressly and specifically stated elsewhere in the Tax Code), it follows that the Court has the power to review setoffs in a CDP proceeding to determine whether there was a pre-existing, valid debt that was owed to the IRS.

> b)    *<u>The IRS setoffs violated setoff common law and Article III mootness principles and are thus invalid.</u>*

The "right of setoff (also called 'offset') allows [parties] that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995) (quoting *Studley v. Boylston Nat'l Bank of Bos.*, 229 U.S. 523, 528 (1913)). The right to apply mutual debts to offset each other does not apply when the debts are disputed. Accordingly, a creditor cannot set off a disputed debt with an undisputed one. That is a matter of black letter law. *Setoff,*

*Black's Law Dictionary* (11th ed. 2019) ("Set off is a mode of defence by which the defendant *acknowledges the justice of the plaintiff's demand*, but sets up a demand of his own against the plaintiff, to counter-balance it either in whole or in part." (emphasis added) (quoting Oliver L. Barbour, *A Treatise on the Law of Set Off* 3 (1841))); 15 *Williston on Contracts* § 44:34 (West 2023) (explaining that "mutual debts do not extinguish one another … either automatically or by an election or other action by one party; rather, the agreement of the parties or judicial action is required").  As the Seventh Circuit has noted:

> Courts regularly require the payment of undisputed debts while the parties litigate their genuine disputes.  This reflects the limits of the common law right of set-off between debts.  Setoffs are permitted only when the debts are "mutual", and debts arising at different times out of different circumstances are not mutual.

*Soo Line R.R. Co. v. Escanaba & Lake Superior R.R. Co.*, 840 F.2d 546, 551 (7th Cir. 1988) (internal citation omitted) (Easterbrook, J.).

To the extent that the IRS's argument is that § 6402(a) rescinds the common law governing setoffs, the answer is no, it does not.  Nowhere in the text is there any indication of that, and even the IRS did not seem to think it so until the middle of this appeal.  It explained in its initial brief that § 6402(a) "is a tax-specific codification of the common-law right of setoff[.]" (Answering Br. at 21.)  Perhaps, as a result of being pressed on that issue at oral argument, the IRS now professes a different view – that "setoffs authorized by § 6402(a) do not

need to follow any common-law principles regarding setoffs[.]" (Supp. Br. at 13.)  The change in position may be convenient but it is ill-considered and unpersuasive.

A "longstanding [rule] is … that statutes which invade the common law are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident."[28]  *United States v. Texas*, 507 U.S. 529, 534 (1993) (cleaned up).  And to "abrogate a common-law principle, the statute must speak directly to the question addressed by the common law."  *Id.* (internal quotation marks omitted).  Section 6402(a) does not do that.

Although § 6402(a) allows the IRS to credit overpayments to "any liability" of the taxpayer, reading that provision to allow a disputed debt to be set off has the infirmity of presupposing that the taxpayer in fact has some liability.  In other words, the reading that the IRS pushes is an exercise in

---

[28] Although it is not essential to our holding, nothing in the legislative history of § 6402(a) suggests that its purpose was to overrule the common law.  Section 252 of the Revenue Act of 1918 appears to be the earliest forerunner of the setoff provision that is now in § 6402(a), and only a single sentence, buried in a House Ways and Means Committee Report for that old act, suggests the purpose for the provision:  "It is believed that this provision will materially assist in the settlement of transactions between the taxpayer and the Government."  H.R. Rep. No. 65-767, at 15 (1918).  If anything, allowing the government to set off disputed debts hinders, rather than assists, settlements, as this case demonstrates.

pure bootstrapping. Zuch alleges that she does not have any liability, and it does nothing to advance the analysis of this case for the IRS to simply declare that she does and then say it is accordingly allowed to effect a setoff. The law is exactly to the contrary. The whole point of Congress's authorization of CDP hearings is to give taxpayers "protections in dealing with the IRS that are similar to those they would have in dealing with any other creditor." S. Rep. No. 105-174, at 67. Allowing offsets such as the ones here would be an affront to the entire purpose of CDP hearings. We instead "take it as given that Congress has legislated with an expectation that the [common law] principle[s] [of setoff] will apply[.]"[29] *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) (cleaned up).

Beyond violating the common law and the clear legislative intent to preserve taxpayer rights in CDP hearings, the setoffs here violate Article III mootness principles. "One scenario in which we are reluctant to declare a case moot is when the defendant argues mootness because of some action it took unilaterally after the litigation began." *Hartnett*, 963 F.3d

---

[29] Treas. Reg. § 301.6330-1(g)(2), Q&A (G)(3) (2006) provides that the IRS may offset overpayments against the unpaid tax in a CDP proceeding during the pendency of the CDP hearing and appeals process. To the extent that regulation provides that the IRS can take an undisputed debt (i.e., an overpayment of taxes, giving rise to an obligation by the government to provide a refund) and apply it against a disputed one (like the alleged tax liability here), such an interpretation of the statute is untenable. Nothing in the plain text of § 6402(a) allows for such a meaning.

at 306; *see also Vigon v. Comm'r*, 149 T.C. 97, 104 n.3 (2017) (the IRS "may not unilaterally oust the Tax Court from jurisdiction – neither in a deficiency case nor in a CDP case" (internal quotation marks omitted)).  That is what we are faced with here.  It is well established that "a defendant's voluntary *cessation* of a challenged practice does not deprive [us] of [our] power to determine the legality of the practice."  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks omitted) (emphasis added).  It is no stretch to likewise conclude that, as a general matter, and when an avenue of relief remains, a defendant cannot unilaterally *complete* a challenged practice to moot a case either.

In short, because the IRS's setoffs were invalid and without legal effect, Zuch's claims are not moot, although Zuch's money is, at least for the time being, in the government's pocket.

**3.    Zuch's Claim Is Also Live Under § 6330(c)(2)(B) Because the Tax Court Retained Jurisdiction to Review Her Liability.**

If we view Zuch's claim as a challenge to liability under § 6330(c)(2)(B), we reach the same conclusion.  Zuch's underlying tax liability was very much in dispute when the IRS withdrew its levy because it had already taken her money without her consent, and it remained a live issue based on (1) a plain reading of the statute, (2) properly read (and non-erroneous) Tax Court precedent, (3) the Tax Court's independent jurisdiction over liability, (4) the Tax Court's

ability to declare Zuch's rights, and (5) the potential preclusive effect of such a declaration.  We address each issue in turn.[30]

> a)  *Nothing in the plain text of § 6330 suggests a taxpayer's challenge to tax liability under § 6330(c)(2)(B) can be rendered moot by the unilateral action of the IRS.*

Section 6330 allows a taxpayer to raise two categories of issues at a CDP hearing.  First, § 6330(c)(2)(A) permits a taxpayer to raise "any relevant issue relating to the unpaid tax or the proposed levy[.]"  Issues under that provision, accordingly, must relate to a tax that is currently unpaid or a levy that is still being proposed.  But § 6330(c)(2)(B), the provision under which Zuch brought her challenge, permits a taxpayer to "*also* raise at the hearing challenges to the existence or amount of the underlying tax liability … if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability."  (emphasis added).  Zuch meets those prerequisites, as the IRS has admitted.  Unlike challenges under § 6330(c)(2)(A), the rights provided under § 6330(c)(2)(B) are not restricted by any requirement that they relate to an unpaid tax or proposed levy.  Consequently, there is nothing in § 6330(c)(2)(B) to suggest that a taxpayer's right to challenge the existence or amount of her underlying tax

---

[30] This discussion is only applicable to taxpayers who did not receive a notice of deficiency or otherwise have a previous opportunity to challenge their underlying tax liability.

becomes moot once the levy is no longer being enforced or the tax is satisfied.

We part ways here with the Fourth and D.C. Circuits. The Fourth Circuit has held that the phrase "underlying tax liability" in § 6330(c)(2)(B) must be read in the "specific context [of] the IRS's attempt to collect via lien or levy." *McLane v. Comm'r*, 24 F.4th 316, 319 (4th Cir. 2022) (internal quotation marks omitted). With that limitation in mind, it reasoned that the Tax Court does not have jurisdiction "over independent overpayment claims when the collection action no longer exists." *Id.* Similarly, the D.C. Circuit reasoned that "all the relief that section 6330 authorizes the tax court to grant" is relief from levy and that, consequently, there is "no appropriate course of action for the Tax Court to take but to dismiss [a case] as moot" when the IRS withdraws its proposed levy. *Willson v. Comm'r*, 805 F.3d 316, 321 (D.C. Cir. 2015) (internal quotation marks omitted).[31]

While it is true that the "plainness or ambiguity of statutory language is determined by reference to … the specific context in which that language is used, and the broader context

---

[31] In addition to *McLane* and *Willson*, the IRS also relies on *Ruesch v. Commissioner*, 805 F. App'x 12, 14 (2d Cir. 2020), to argue that a taxpayer can challenge her underlying tax liability only when the IRS is actively seeking to levy. But in *Ruesch*, the issue before us was never in play. The Tax Court there held that it lacked jurisdiction over the dispute because the IRS had not issued the taxpayer a valid notice of determination, not because of its interpretation of § 6330(c)(2)(B). *Id.*

of the statute as a whole[,]" *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997), we do not read "underlying tax liability" so narrowly. Section 6330 is not directed toward helping the IRS collect taxes via lien or levy. On the contrary, by its terms it provides taxpayers a forum to *challenge* a lien or levy and accounts for different circumstances in which that need may arise – including the circumstance in which the taxpayer had no opportunity to challenge her underlying liability.

As the Tax Court has explained, the broader purpose of § 6330 in the overall statutory scheme is rather straightforward – to "collect the *correct* amount of tax." *Montgomery*, 122 T.C. at 10 (emphasis added) ("In view of the statutory scheme as a whole, we think the substantive and procedural protections contained in sections 6320 and 6330 reflect congressional intent that the Commissioner should collect the correct amount of tax, and do so by observing all applicable laws and administrative procedures."); *see also* S. Rep. No. 105-174, at 67 ("[F]ollowing procedures designed to afford taxpayers due process in collections will increase fairness to taxpayers."). Allowing a taxpayer to challenge her underlying tax liability in a context like the present case, even after the IRS ceases collection, not only comports with the text of § 6330 but supports that objective. It also comports with fundamental notions of due process, as the taxpayer in that scenario necessarily has an independent right to challenge her tax liability in a CDP hearing.[32] *See supra* section I.A.2.

---

[32] If the IRS could impose liability without sending a notice of deficiency, and could both offset the purported liability so as to cease collection and moot any CDP challenge based on its cessation, that taxpayer would be denied *any* pre-

After the IRS Office of Appeals considers the taxpayer's challenges at the CDP hearing and issues its determinations as to the levy and the taxpayer's liability, the Tax Court obtains jurisdiction to review those determinations. § 6330(d)(1) ("The person may … petition the Tax Court for review of such determination (and the Tax Court *shall have jurisdiction* with respect to such matter)." (emphasis added)). Accordingly, the Tax Court's "jurisdiction is not limited to the notice of [the proposed collection action] that triggered th[e] collection proceeding but rather comprehends all the issues that Congress allowed to be included in 'such matter.'" *Vigon*, 149 T.C. at 107. "[S]uch matter" includes a challenge to what the IRS asserts to be the underlying tax liability.[33] *Id.*

In short, there is nothing in the plain text of § 6330 that suggests a taxpayer's challenge to the tax liability at issue in

---

deprivation opportunity to contest what the IRS says she owes. Because that taxpayer may not be able to initiate a deficiency proceeding or carry forward her CDP action, she also could be denied *any* Article III forum in which to contest her liability. This is true before collection, and it may also be true as a general matter. Here, for example, it is not clear whether Zuch would be able to challenge her tax liability at all (outside of a live CDP proceeding) because her post-collection claim might be time-barred. *See infra* note 41.

[33] When "the validity of the underlying tax liability is properly at issue, the Court will review the matter on a de novo basis." *Sego v. Comm'r*, 114 T.C. 604, 610 (2000).

an action under § 6330(c)(2)(B) can be rendered moot by the unilateral action of the IRS.

#### b)    Greene-Thapedi*'s reasoning was faulty.*

Nevertheless, the Tax Court here held otherwise. It dismissed Zuch's case as moot "[b]ecause there [was] no unpaid liability for the determination year upon which a levy could be based, and [the IRS was] no longer pursuing the proposed collection action[.]" (App. at 7-8.) That dismissal followed the reasoning of an earlier case called *Greene-Thapedi v. Commissioner*, 126 T.C. 1 (2006), with facts very similar to the case before us now. There, the IRS notified a taxpayer that it intended to levy on her property to collect a disputed tax liability. *Id.* at 2-3. The taxpayer then challenged the tax liability in a CDP hearing. *Id.* at 3. The IRS Office of Appeals sustained the levy, and the taxpayer petitioned the Tax Court for review. *Id.* After she filed her petition, the IRS used the taxpayer's overpayment in a later year to fully satisfy the disputed tax liability. *Id.* at 4. The Tax Court then dismissed the taxpayer's proceeding as moot, holding that "whatever right petitioner may have to challenge the existence and amount of her underlying tax liability in this proceeding arises only in connection with her challenge to the proposed collection action." *Id.* at 8. And if "the proposed levy is moot," then the taxpayer "has no independent basis to challenge the existence or amount of her underlying tax liability" in her proceeding at the Tax Court.[34] *Id.*

---

[34] The Tax Court also denied a refund to the taxpayer because "section 6330 does not expressly give [the Tax Court]

To arrive at that conclusion, the *Greene-Thapedi* Court relied on two inapposite and non-precedential Tax Court cases, *Chocallo v. Commissioner*, T.C.M. (RIA) 2004-152, and *Gerakios v. Commissioner*, T.C.M. (RIA) 2004-203.[35]  *See id.* at 7-8.  In both of those cases, the taxpayer was not asserting any ongoing challenge to the tax liability underlying the CDP proceeding when the Tax Court declared the matter moot.  In *Chocallo*, the IRS discovered during the CDP hearing that it had incorrectly assessed the taxpayer's liability and so it refunded the amount already collected.  *Chocallo* at 2.  At that point, the IRS moved to dismiss the case as moot.  *Id.*  The taxpayer then filed a "Supplemental Motion for Sanctions, Contempt and For Other Relief[,]" requesting that the IRS employees who handled her case be criminally prosecuted and claiming damages for alleged wrongs committed by IRS employees.  *Id.*  Thus, the taxpayer was seeking damages; she was no longer contesting the underlying tax liability that gave rise to the suit.  In *Gerakios*, the taxpayer voluntarily paid his tax liabilities after a CDP hearing.  *Gerakios* at 1.  He "did not dispute his underlying liabilities."  *Id.* at 1 n.1.  He paid the tax because the tax lien was hindering his ability to refinance his home.  *Id.* at 1.  He sought review in the Tax Court claiming

---

jurisdiction to determine an overpayment or to order a refund or credit of taxes paid."  *Greene-Thapedi*, 126 T.C. at 8.

[35] The Tax Court issues memorandum opinions, like *Chocallo* and *Gerakios*, which are considered non-binding precedent.  *See Dunaway v. Comm'r*, 124 T.C. 80, 87 (2005) ("[M]emorandum opinions of this Court are not regarded as binding precedent.").

only that IRS "employees mistreated him [and] violated his civil rights, and that his credit rating was adversely affected by the filing of the lien." *Id.* Since neither case involved a taxpayer who was then challenging an underlying tax liability, as is the case here and was in *Greene-Thapedi*, the *Greene-Thapedi* court's reliance on *Chocallo* and *Gerakios* was misplaced.

The Tax Court's own precedent since *Greene-Thapedi* suggests that the case was wrongly decided. In *Vigon v. Commissioner*, decided in 2017, the Tax Court held that the IRS cannot unilaterally moot a case by withdrawing its proposed collection activity if the Tax Court has already "obtained jurisdiction of a liability challenge when the petition was filed." 149 T.C. at 107. That's because the "liability issue may remain even after the collection issues have been resolved or become moot." *Id.* at 105. To be sure, a footnote in *Vigon* distinguished it from *Greene-Thapedi* because *Greene-Thapedi* "involved a liability that had been satisfied" and "not merely abated," as in *Vigon*. *Id.* at 105 n.4. But there is nothing in § 6330 to suggest that distinction. Once the Tax Court has jurisdiction to resolve a disputed tax liability, it does not lose that jurisdiction simply because the IRS decides to satisfy the asserted liability with the taxpayer's own funds.

Indeed, even the IRS used to recognize that. In a notice to its attorneys in 2003, it explained that "[a] motion to dismiss for mootness is inappropriate if petitioner is disputing the existence or amount of the liability .… *Even if the liability has been paid*, petitioner may still dispute the liability[.]" I.R.S. Notice CC-2003-016 (May 29, 2003), 2003 WL 24016801

(emphasis added).[36]  That is the correct view, and the IRS should have stuck with it.  *Greene-Thapedi*'s holding that a taxpayer may only challenge her underlying tax liability if there remains an unpaid tax or a proposed levy is erroneous.[37]

---

[36] The IRS "Chief Counsel is appointed by the President of the United States" and is the "chief legal advisor to the IRS Commissioner on all matters pertaining to the interpretation, administration and enforcement of the Internal Revenue Laws[.]"  *Office of Chief Counsel At-a-Glance*, IRS, https://www.irs.gov/about-irs/office-of-chief-counsel-at-a-glance [https://perma.cc/63NC-KGG9].  Chief Counsel Notices "are directives [to IRS attorneys and staff] that provide interim guidance, furnish temporary procedures, describe changes in litigating positions, or announce administrative information."  *Chief Counsel (CC) Notices*, IRS, https://www.irs.gov/chief-counsel-notices [https://perma.cc/S68G-5MA8].

The IRS updated its position with another notice in 2005, stating, "[a] motion to dismiss on ground of mootness … should be filed if the tax liability has been paid fully and the taxpayer raises no other relevant issues."  I.R.S. Notice CC-2005-008 (May 19, 2005), 2005 WL 1259554.  Zuch's claim that the estimated tax payments were applied incorrectly is certainly a relevant issue to whether the Tax Court CDP proceeding should remain open.

[37] In a footnote in *Ahmed v. Commissioner*, 64 F.4th 477, 487 n.10 (3d Cir. 2023), we stated that a petitioner's lien-withdrawal request was moot because the IRS had already released its liens once the taxpayer remitted a deposit to the IRS.  But the taxpayer in *Ahmed* never challenged his

> ### c) *The Tax Court need not have repayment or refund jurisdiction for there to be a live dispute.*

In *Greene-Thapedi*, the Tax Court said that, once a levy was removed and the tax was paid, it could not provide any other relief to the taxpayer because "section 6330 does not expressly give [the] Court jurisdiction to determine an overpayment or to order a refund or credit of taxes paid." 126 T.C. at 8. It reasoned that full payment rendered any conclusion it might make as to liability "at best, … an advisory opinion." *Id.* at 13.

A leading tax-procedure treatise, noting that "[m]any scholars and practitioners believe that *Greene-Thapedi* reached an incorrect conclusion[,]" explains how the Tax Court got it wrong:

> [A] [t]axpayer's full payment of the previously unpaid tax liability should not render the entire case "moot" if the Tax Court otherwise has jurisdiction over the underlying liability. Full payment does not necessarily resolve the dispute as the Tax Court held. The question of whether a dispute remains is separate from the question of whether the Tax Court can grant a refund. Even if granting a refund is barred, the Tax Court

---

underlying tax liability in the CDP hearing, so that case has no bearing here.

could still determine the correct liability as part of its CDP determination.

Michael I. Saltzman & Leslie Book, *IRS Practice & Procedure* ¶ 14B.16[4][a] (West 2023).

We agree. Notwithstanding any overpayment or refund jurisdiction, a live dispute as to underlying liability does not become moot based upon payment of the "unpaid" tax. Section 6330 grants the Tax Court jurisdiction to review a CDP determination regarding a taxpayer's properly raised challenge to the existence or amount of her underlying tax liability, full stop. That jurisdiction does not change until the dispute is resolved. *See Naftel v. Comm'r*, 85 T.C. 527, 530 (1985) ("[G]enerally, once a petitioner invokes the jurisdiction of the Court, jurisdiction lies with the Court and remains unimpaired until the Court has decided the controversy."). Therefore, overpayment or refund jurisdiction is not essential to having a live controversy.[38]

> *d)*     *A Tax Court determination of Zuch's right to the estimated payments would not be an impermissible declaratory judgment.*

Despite all of the foregoing, the IRS argues that a Tax Court determination of the proper allocation of the tax payments in a CDP hearing would be an improper declaratory

---

[38] Accordingly, we need not, and do not, reach any conclusion about whether the Tax Court has overpayment or refund jurisdiction in a context like this.

judgment. (Supp. Br. at 15 ("Nothing in the Code or Section 6330 authorizes the Tax Court to issue advisory opinions or declaratory judgments in CDP cases.").) The Declaratory Judgment Act allows any United States court to render a declaratory judgment when there is a case or controversy, "except with respect to Federal taxes[.]"[39] 28 U.S.C. § 2201(a). If that were all that one knew of the Act, the IRS's argument would be more persuasive. But, although the Act is broadly worded, courts have traditionally construed it to be coterminous with the Tax Anti-Injunction Act, and that undermines the agency's position.[40]

The Tax Anti-Injunction Act generally provides that there can be "no suit for the purpose of restraining the assessment or collection of any tax[.]" § 7421(a). But it also provides an exception for a request under § 6330(e)(1) to enjoin a levy via a CDP hearing and any appeals. *Id.* (prohibiting suits to restrain assessment or collection of a tax "[e]xcept as provided in section[] … 6330(e)(1)," among others). Consequently, the Tax Anti-Injunction Act is not violated when a levy is stayed during the pendency of a CDP hearing. Furthermore, because the Tax Anti-Injunction Act and the Declaratory Judgment Act are coterminous, the phrase "'with respect to Federal taxes' [in the Declaratory Judgment Act] means 'with respect to the assessment or collection of

---

[39] The Declaratory Judgment Act carves out some tax exceptions that are not relevant here.

[40] *See Z St., Inc. v. Koskinen*, 44 F. Supp. 3d 48, 56 (D.D.C. 2014) (collecting cases from the Fourth, Sixth, Seventh, Ninth, Tenth, and D.C. Circuits).

taxes.'"  *Cohen v. United States*, 650 F.3d 717, 727 (D.C. Cir. 2011).

Thus, when a court has the power to enjoin a levy under the Tax Anti-Injunction Act, it also has the power to declare the rights of the parties in that proceeding without violating the Declaratory Judgment Act.  As the D.C. Circuit has explained,

> a functional concern exists with construing the [Declaratory Judgment Act]'s exception to bar relief otherwise allowed under the [Tax Anti-Injunction Act].  The court would have jurisdiction to enjoin the parties appearing before it, but not to declare their rights.  This defies common sense, however, "since an injunction of a tax and a judicial declaration that a tax is illegal have the same prohibitory effect on the federal government's ability to assess and collect taxes."

*Id.* at 730 (quoting *Wyoming Trucking Ass'n, Inc. v. Bentsen*, 82 F.3d 930, 933 (10th Cir. 1996)); *see also Tomlinson v. Smith*, 128 F.2d 808, 811 (7th Cir. 1942) ("[T]he jurisdiction of the court to issue a restraining order is … determinative of its jurisdiction to declare the rights of the parties relative thereto.  It is unreasonable to think that a court with authority to issue a restraining order is without power to declare the rights of the parties in connection therewith.").

Because the Declaratory Judgment Act does not bar the Tax Court from declaring the rights to estimated payments at issue in a CDP hearing, there is a live case and controversy, and a Tax Court determination of Zuch's tax liability would not be an improper declaratory judgment.

e)     *The IRS has not met its burden to show that no relief would be available to Zuch if the Tax Court declared she had a right to the estimated payments.*

To show mootness, the IRS must prove that Zuch could have no relief whatsoever if the Tax Court were to declare that she had a right to the estimated payments. Given what we have already said here, to carry its heavy burden, the IRS must prove that a declaration by the Tax Court of Zuch's rights in her CDP case would not have preclusive effect on a future refund claim. In a supplemental brief, the IRS has taken the position that such a determination would not have any preclusive effect, but it cites no relevant authority to support that proposition. And, indeed, the IRS Office of Chief Counsel has at least twice issued notices indicating the opposite. *See* I.R.S. Notice CC-2006-005 (Nov. 21, 2005), 2005 WL 3272051 ("A judicial determination in a CDP case of a taxpayer's underlying tax liability for a taxable year (which may be less than the taxpayer's payments for that year) may be subject to estoppel principles in a subsequent refund action[.]"); I.R.S. Notice CC-2009-010 (Feb. 13, 2009), 2009 WL 497736 ("A judicial determination of the amount of the underlying tax liability in a CDP case may, however, estop both parties from contesting the amount of that same liability in a subsequent refund action[.]").[41]     Accordingly, the IRS has not met its heavy

---

[41] At argument, the IRS asserted that any refund claim Zuch had is barred by the statute of limitations in § 6511. But in its supplemental brief, the IRS now says that it "has

---

determined that she may still be able to file a refund suit in the district court or Court of Federal Claims." (Supp. Br. at 3.) It explains that Zuch did not receive the required two-year notice of disallowance that would have triggered the two-year limitations period for filing a refund suit under § 6532(a)(1). Because of the Tucker Act, however, it is unclear whether a court will hear Zuch's refund claim. That Act bars any suit against the United States "unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). The Court of Federal Claims has longstanding precedent that § 6532 preempts the Tucker Act's general statute of limitations. *Detroit Tr. Co. v. United States*, 130 F. Supp. 815, 818 (Ct. Cl. 1955). And the IRS has repeatedly opined that the Tucker Act does not apply to tax refund claims. Rev. Rul. 56-381, 1956-2 C.B. 953; I.R.S. CCA 201044006 (Nov. 5, 2010), 2010 WL 4384169; I.R.S. Notice CC-2012-012 (Jun. 1, 2012), 2012 WL 2029785; I.R.S. IRM 34.5.2.2(5) (Apr. 22, 2021), https://www.irs.gov/irm/part34/irm_34-005-002 [https://perma.cc/46FG-E3TE]. If that were true, Zuch may not be barred from filing a refund claim because the two-year limitations period under § 6532 has not been triggered. But three district courts have held that the six-year limitations period is the outer limit for any claims against the government. *See Breland v. United States*, No. 10-cv-00007, 2011 WL 4345300, at *6-7 (N.D.N.Y Sept. 15, 2011); *Wagenet v. United States*, No. 8-cv-00142, 2009 WL 4895363, at *3 (C.D. Cal. Sept. 14, 2009); *Finkelstein v. United States*, 943 F. Supp. 425, 432 (D.N.J. 1996). Under that view, Zuch's refund suit would be time-barred because six years have passed since her right accrued to file a refund claim. We do not reach any conclusion

burden to show that Zuch would have no relief whatsoever if the Tax Court were to declare she has a right to the estimated tax payments.  And, of course, an agency of the United States, having received a court order declaring a citizen's rights, is expected to either appeal it or abide by it.[42]

## III.    CONCLUSION

For the foregoing reasons, we will vacate the Tax Court's order of dismissal and remand for that tribunal to determine whether Zuch is entitled to receive credit for any amount of the estimated tax payments at issue.

---

today concerning the viability of a refund claim.  She may have a viable claim, and that is enough for today's purposes.

[42] If enforcement were needed, requiring a taxpayer to go to a different court to enforce a right judicially determined in the Tax Court is consistent with historical practice.  In fact, for over sixty years, the Tax Court had jurisdiction to determine a taxpayer's overpayment in a deficiency proceeding but did not have authority to order a refund consistent with that determination.  *See Greene-Thapedi*, 126 T.C. at 9 (explaining that the Tax Court had overpayment, but no refund, jurisdiction from 1926 until the enactment of § 6512(b) in 1988).